FERGUSON (OWENS), APPELLEE, *v.* OWENS ET AL., APPELLANTS.
OWENS ET AL., APPELLANTS, *v.* FERGUSON (OWENS), APPELLEE.

[Cite as Ferguson *v.* Owens (1984), 9 Ohio St. 3d 223.]

(No. 82-1824—Decided February 29, 1984.)

*Santen, Santen & Hughes Co., L.P.A.,* and *Mr. William B. Singer,* for appellee.

*Mr. Simon Groner,* for appellants.

*Per Curiam.* Generally, the named beneficiary to the proceeds of a life insurance policy becomes legally entitled to its proceeds upon the death of the insured. *Katz* v. *Ohio Natl. Bank* (1934), 127 Ohio St. 531. Taking this as the starting point, the issue in this case is whether a named beneficiary of the proceeds of a life insurance policy may be divested of his right to such proceeds by one having a superior equitable right therein. Then the question becomes whether, upon the facts in this record, there was presented a genuine issue of material fact that the appellants possess a superior equitable right to the proceeds of the $40,000 life insurance policy on Ronald Owens' life.

Since this discussion will be dealing with whether a constructive trust may reasonably be impressed under the facts of the instant case, at the outset we should define the subject. A constructive trust is defined in 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221, as:

"* * * [A] trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. It is raised by equity to satisfy the demands of justice. * * *"

In *Beatty* v. *Guggenheim Exploration Co.* (1919), 225 N.Y. 380, 122 N.E. 378, we find the following pertinent commentary by Justice Cardozo, at pages 386 and 389:

"* * * A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. * * * A court

of equity in decreeing a constructive trust is bound by no unyielding formula.''

See, also, *Kuck* v. *Sommers* (App. 1950), 59 Ohio Law Abs. 400.

A constructive trust is, in the main, an appropriate remedy against unjust enrichment. This type of trust is usually invoked when property has been acquired by fraud. However, a constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud. See 53 Ohio Jurisprudence 2d (1962) 578-579, Trusts, Section 88; V Scott on Trusts (3 Ed. 1967) 3412, Section 462.

In applying the theories of constructive trusts, courts also apply the well known equitable maxim, ''equity regards done that which ought to be done.''

Although this case presents issues somewhat novel to the reported decisions of this court, we find that other jurisdictions have been confronted with somewhat similar questions, and have applied the doctrine of constructive trust in situations involving after-acquired life insurance policies in determining the equities as between the title owner of such policies and those who were to be named beneficiaries by the terms of a separation agreement embodied within a divorce decree. See *Travelers Ins. Co.* v. *Daniels* (C.A. 7, 1981), 667 F. 2d 572; *Appelman* v. *Appelman* (1980), 87 Ill. App. 3d 749, 410 N.E. 2d 199; *Brunnenmeyer* v. *Mass. Mut. Life Ins. Co.* (1979), 66 Ill. App. 3d 315, 384 N.E. 2d 446; *Lincoln National Life Ins. Co.* v. *Watson* (1979), 71 Ill. App. 3d 900, 390 N.E. 2d 506; *McKissick* v. *McKissick* (Nev. 1977), 560 P. 2d 1366; *General American Life Ins. Co.* v. *Rogers* (Mo. App. 1976), 539 S.W. 2d 693.

We shall now determine whether the evidence presented to the trial court upon motion for summary judgment did create a genuine issue of material fact. Here, the appellant Sally Owens and Ronald Owens were divorced in a proceeding in West Virginia. As part of the agreed distribution of the marital assets and the determination of alimony, and support for the minor children, the parties also agreed that life insurance would be procured on Ronald's life in the face amount of $100,000, the beneficiaries of such policy to be the children of the parties, and that such insurance would be procured through Ronald's employer. The facts show that Ronald's employer at that time, Robert O. Whitesell & Associates, offered life insurance to its salesmen up to the face amount of $12,000, $3,000 of which was premium free to the employee, with the premiums for the remaining $9,000 being paid by the employee through payroll deductions.

Subsequent to the divorce decree containing the provision for life insurance, Ronald Owens seemingly attempted to fulfill such life insurance provision by obtaining the accident and dismemberment policy in the face amount of $100,000. The desire and intent of Ronald in this respect may reasonably be ascertained by his statement in the note to the appellant to the effect that he had procured life insurance, and that the premiums had been deducted from his paychecks and that in turn he was charging Sally's child support account with such premiums.

The procurement of this insurance coverage, however, did not technically comply with the provisions of the West Virginia divorce decree, in that there is a significant difference between accidental death insurance and life insurance. Such a difference in the nature of these policies, particularly within the context of these types of cases, was set forth in the case of *Oglesby-Barnitz Bank & Trust Co.* v. *Clark* (1959), 112 Ohio App. 31 [15 O.O.2d 415]. See, also, Couch on Insurance 2d (1959), Section 1:71.

Such a state of the facts presented here reasonably raises the issue of whether the accidental death and dismemberment policy purchased by Ronald Owens was that policy which was contemplated by the parties and referred to in the prior divorce decree agreed to by the parties. If the trier of facts is able to answer this query in the affirmative, then further development of the facts and circumstances in order to determine the intent of the parties would be unnecessary. However, if this query is answered in the negative, then a further determination must be made. The divorce decree required Ronald Owens to purchase $100,000 of life insurance "through his company." At such time he was employed by Whitesell & Associates. However, as stated, at the time he purchased the $40,000 life insurance policy he was in the employment of another company. This evidence reasonably raises a genuine issue as to whether the divorce decree had reference to the company by which he was employed at the time of the decree, or to any subsequent employer.

The court of appeals found the provision of the divorce decree to be ambiguous, and was unable to determine from the decree the nature and limits of Ronald's agreement with respect to the acquisition of life insurance subsequent to his divorce. After examination of the record, the court of appeals was still unable to determine the boundaries of the agreement and whether the decedent complied with it. This ambiguity would seem to preclude summary judgment in this case.

Accordingly, believing that genuine issues of material fact were presented to the trial court, the judgment of the court of appeals is hereby reversed, and this cause is remanded to the trial court for further proceedings in accordance herewith.

*Judgment reversed*
*and cause remanded.*

CELEBREZZE, C.J., HOLMES, C. BROWN and J. P. CELEBREZZE, JJ., concur.

W. BROWN, SWEENEY and LOCHER, JJ., concur in judgment only.