**Donald C. BELL, et al., Plaintiffs,**

v.

**STRAIGHT, INC., et al., Defendants.**

Civ. No. C–1–88–0760.

United States District Court,
S.D. Ohio.

March 1, 1989.

Gerald Simmons, Cincinnati, Ohio, Rita Eppler, Columbus, Ohio, for plaintiffs.

D. Michael Poast, Cincinnati, Ohio, for defendants.

## ORDER

CARL B. RUBIN, Chief Judge.

This matter is before the Court on defendants' motion to dismiss the complaint and plaintiffs' opposing memorandum (doc. nos. 18 and 22); plaintiffs' motion for summary judgment (doc. no. 20); defendants' memorandum in opposition to plaintiffs' motion for summary judgment and cross-motion for summary judgment (doc. no. 23)[1] and plaintiffs' memorandum in opposition to defendants' cross-motion (doc. no. 27).

1. Defendants' motion to dismiss and cross-motion for summary judgment shall be considered

### Factual and Procedural Background

Plaintiffs filed a class action complaint against defendants Straight, Inc. (Straight), a nonprofit organization which has established and sponsored programs in various state for rehabilitating children with drug and alcohol abuse problems, and the Straight Foundation, a nonprofit organization which raises funds for the establishment and operation of the Straight rehabilitation programs. This lawsuit has been certified as a class action (doc. no. 30). The class is composed of donors who contributed funds or other assets to start or maintain a Straight program in the Greater Cincinnati area. Anthony J. Celebrezze, Jr., Attorney General of the State of Ohio, is also a plaintiff in this lawsuit.

The following facts are not in dispute: Prior to the early 1980's, Straight operated a drug and alcohol rehabilitation program for children in Florida. Several parents who reside in the Cincinnati area and who had children enrolled in the Florida program requested Straight to establish a program in the Cincinnati area. At Straight's behest, these parents raised money to demonstrate their commitment to establishment of a Straight program in this area. Straight established a program in the Cincinnati area in 1981. Straight initially leased a facility for its program in Milford, Ohio with an option to buy, which Straight exercised in 1983.

The Cincinnati Straight program met its demise in 1987. During the period of its operation, the program served approximately 769 children. The last treatment in the program was administered in August, 1987. Between 1981 and 1985, approximately one and one-half million dollars were raised to benefit the Cincinnati Straight program.

Straight continues to hold legal title in the Milford property, which is now on the market. Straight currently operates rehabilitation programs in St. Petersburg and Orlando, Florida; Washington, D.C.; At-

together under Fed.R.Civ.P. 12(g).

lanta, Georgia; Stoughton, Massachusetts; Plymouth, Michigan; and Dallas, Texas.

### Claims of the Parties

Plaintiffs allege that they made contributions to Straight with the intention and the understanding, based on Straight's representations, that the funds would be used for the establishment and operation of a Straight program in the Cincinnati area. Plaintiffs allege that Straight intends to sell its Milford property and divert the proceeds of the sale to uses other than those for which plaintiffs' donations were intended. Plaintiffs seek declaratory and injunctive relief to prevent diversion of the funds under the theories of breach of contract, conversion, breach of constructive and express trust, *cy pres*, and deviation. They also seek establishment of a constructive trust to insure that any proceeds from the sale of the Milford property will be used to benefit children with drug and alcohol abuse problems in the Greater Cincinnati area. In the alternative, plaintiffs seek compensatory damages to be paid to the Greater Cincinnati Foundation.

Defendants contend that the donations made by plaintiffs were completed gifts that were used for the purposes intended. They claim that plaintiffs are not entitled to the relief they seek under any of the theories presented.

### Summary Judgment

The summary judgment procedure under Fed.R.Civ.P. 56 is designed to secure a just, speedy, and inexpensive determination of any action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Rule 56(c) permits the Court to grant summary judgment as a matter of law if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate the absence of any genuine issue of material fact. *Id.* at 323, 106 S.Ct. at 2553.

### Express Trust

Defendants allege that plaintiffs' donations do not constitute an express trust because the elements of an express trust, which are (1) manifestation of an intent to create a trust, (2) the existence of trust property, and (3) a fiduciary relationship, are lacking. *Brown v. Citizens*, 56 Ohio St.2d 85, 91, 382 N.E.2d 1155, 1158 (1978). The Court need not ascertain whether an express trust exists, since plaintiffs may be entitled to relief under their alternative theories of liability.

### Charitable Trust

■ Plaintiffs seek imposition of a charitable trust on Straight and plaintiffs' contributions to Straight in favor of the Greater Cincinnati Foundation, a nonprofit organization which supports philanthropic causes in the Greater Cincinnati area. Plaintiffs contend that imposition of a charitable trust is proper to insure that the donations are used for the purpose for which they were intended.

Ohio law defines a charitable trust as: any fiduciary relationship with respect to property arising under the law of this state or of another jurisdiction as a result of a manifestation of an intention to create it, and subjecting the person by whom the property is held to fiduciary duties to deal with the property within this state for any charitable, religious or educational purpose. Ohio Rev.Code Ann. § 109.23(A) (Page 1984).

It is essential to the creation of a charitable trust that there be a separation of the legal estate from the beneficial enjoyment thereof. *Edgeter v. Kemper*, 73 OLAbs 297, 136 N.E.2d 630, 634 (1955). In determining whether a charitable trust exists, the question to be resolved is whether the donor expressed a desire that the recipient use the property in a certain way and whether the donor expressed an intention to impose a duty on the recipient to so use it. *Ohio Society for Crippled Children & Adults, Inc. v. McElroy*, 175 Ohio St. 49, 191 N.E.2d 543, 545 (1963).

In a case involving a purported charitable trust, the Court must use liberal and broad rules of construction. *Barton v. Parrott*, 25 Ohio Misc.2d 8, 495 N.E.2d 973, 975 (Ohio C.P.1985). The law of equity

favors a charitable trust. *Danner v. Shanafelt,* 159 Ohio St. 5, 110 N.E.2d 772, 774 (1953).

Straight registered with the State of Ohio as a charitable trust under § 109.23. Nonetheless, defendants contend that Straight is not a charitable trust because there has been no separation of the legal and equitable title to its assets. Defendants further assert that § 109.23 limits its definitions to the operation of the Ohio Charitable Trust Act itself and defines a charitable trust more broadly than it is defined at common law.

It is not clear from the undisputed facts whether plaintiffs expressed a desire that their donations be used in a certain manner; whether plaintiffs expressed an intention to impose a duty on Straight to use their donations in that manner; and whether there was a separation of the legal estate from the beneficial enjoyment thereof. Thus, the Court cannot determine on the basis of the record whether a charitable trust was created. The fact that Straight registered with the State of Ohio as a charitable trust militates against a finding at this early stage of the litigation that such a trust was not created. Thus, summary judgment in favor of either party on this issue is not appropriate.

### Constructive Trust

■ Plaintiffs also seek imposition of a constructive trust on any proceeds from the sale of the Milford property. The powers of the Ohio State Attorney General under § 109.23 are "in addition to and not in limitation of his powers held at common law." Ohio Rev.Code Ann. § 109.24. The Attorney General has the power at common law to inquire into any abuses of charitable donations. *Brown,* 56 Ohio St.2d at 90, 382 N.E.2d 1155. In addition to enforcing express trusts, the Attorney General, in order to protect the public interest, may bring suit to impose a constructive trust on funds collected for charitable purposes but subsequently diverted to other purposes. *Id.* at 91, 382 N.E.2d 1155. Such a trust may be imposed without regard to the intent of the

parties. *Croston v. Croston,* 18 Ohio App. 2d 159, 247 N.E.2d 765, 769 (1969).

A constructive trust is defined as:

A trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence by commission of wrong, or by any form of unconscionable conduct, artifice or concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. *Id.* 247 N.E.2d at 768.

A constructive trust arises when the holder of the legal estate in property cannot also enjoy the beneficial interest therein without violating some established principle of equity. *Id.* 247 N.E.2d at 767.

The principle of a constructive trust is usually invoked when property has been acquired by fraud. *Ferguson v. Owens,* 9 Ohio St.3d 223, 225, 459 N.E.2d 1293, 1295 (1984) (citing Am.Jur.2d 446, *Trusts* Section 221 (1975)). However, it may be applied even though property has been acquired without fraud when it is against principles of equity that the property be retained by a certain person. *Id.* The Court is not limited to imposing a constructive trust under the circumstances enumerated above: It may impose same in situations upon which equity will impose liability to prevent unjust enrichment and unfairness. *Croston,* 247 N.E.2d at 768.

In the context of charitable donations, the purpose of a constructive trust is to prevent the unjust enrichment of those who would abuse their voluntary roles as public solicitors for charity. *Brown,* 56 Ohio St.2d at 91, 382 N.E.2d 1155. Unjust enrichment occurs when one enriches himself at the expense of another contrary to equity. *Croston,* 247 N.E.2d at 768. A general moral duty does not meet the demands of equity. *Id.* There must be some specific legal principle or situation which equity has established or recognized to bring a case within the scope of the doctrine of unjust enrichment. *Id.*

Defendants allege that a constructive trust cannot be imposed in this case because they have not engaged in any unethical conduct and no equitable basis for imposing a constructive trust exists. Defendants claim that plaintiffs' donations were used for the purpose for which they were intended, so that equity does not permit imposition of a constructive trust. Defendants further allege that a constructive trust cannot be imposed because plaintiffs' donations were a completed gift.

In support of the latter proposition, defendants cite *Croston* and several cases involving the construction of wills providing for devises of land. *Croston* does not preclude imposition of a charitable trust in this case. *Croston* did not involve a gift or donation made for a charitable purpose. Because this case involves charitable donations, the State Attorney General has the power to inquire into any alleged abuses of such donations and to seek to impose a constructive trust if such donations were collected for charitable purposes but diverted to other purposes. The remaining authorities cited by defendants do not limit the Attorney General's power to do so in this case.

Moreover, none of the authorities cited by defendants preclude imposition of a constructive trust where charitable donations have initially been employed for their intended purpose but subsequently diverted to another use. *Brown* expressly allows for imposition of a constructive trust under such circumstances. Whether Straight has diverted or intends to divert plaintiffs' donations to uses other than those for which they were originally intended and employed is a disputed question of fact that cannot be resolved on the basis of the record before the Court. Therefore, summary judgment on the issue of whether a constructive trust may be imposed in this case is not appropriate.

### Resulting Trust

■ A resulting trust arises in favor of one who transfers property under circumstances that raise a rebuttable inference that the transferor intended to transfer to another bare legal title without giving the transferee a beneficial interest in the property. *Croston,* 247 N.E.2d at 769. The circumstances surrounding plaintiffs' donations in this case suggest that plaintiffs may not have intended to transfer the beneficial interest in their contributions to Straight. This is a disputed issue. Accordingly, summary judgment may not be granted on plaintiff's claim of a resulting trust.

### Cy Pres and Deviation

■ *Cy pres* is a rule of construction used by courts of equity to effectuate the intention of a charitable donor as "near as may be" where it has become impossible or impractical as a result of changing conditions or circumstances to give effect to the donor's intention. *Cheney v. State Council of Ohio Junior Order,* 81 OLAbs 395, 162 N.E.2d 242, 244 (1959). Three essential elements must be established before the *cy pres* doctrine may be applied. They are (1) that there is a valid charitable trust; (2) that it is impossible or impractical to carry out the specific purposes of the trust; and (3) that the donor evinced a general charitable intent. *Id.* The doctrine of *cy pres* cannot be invoked when the donor has expressed an intention which is restrictive, exclusive, and limited to a specific purpose that is incapable of being carried out. *Id.* 162 N.E.2d at 245.

The doctrine of deviation applies to both private and charitable trusts. *Id.* The court is not required to find a general charitable intent in order to apply the doctrine of deviation. *Id.* The doctrine may be invoked only in those cases in which its application will effectuate the general purpose of the gift and will not enlarge or change the class of beneficiaries who the gift is intended to benefit. *Id.*

Whether the doctrine of *cy pres* or deviation may apply in this case depends upon several unsettled issues: (1) whether there is a valid charitable trust; (2) how broadly plaintiffs' purpose in making their donations is defined; and (3) whether that purpose can continue to be effectuated despite the demise of the Cincinnati Straight pro-

gram. Plaintiffs allege that they made donations to Straight in order to bring a Straight program to Cincinnati, and more generally allege that they made donations for the benefit of children with alcohol and drug abuse problems in the Greater Cincinnati area. Although the operation of a Straight program in this area may be an impossibility, the latter purpose may be accomplished by directing that the proceeds, if any, of the sale of the Milford property be used for other rehabilitation programs in this area.

Assuming, *arguendo*, that the doctrine of *cy pres* or deviation may apply in this case, whether application of either doctrine is appropriate depends on another disputed issue; i.e., whether defendants intend to divert any proceeds from the sale of the Milford property to uses other than those for which plaintiffs' donations were intended. In the absence of specific evidence on this point, summary judgment in favor of either party is not warranted.

### Contract and Conversion

■ Defendants allege that plaintiffs' claims for breach of contract and conversion must fail because (1) no contract was made between plaintiffs and Straight, and (2) plaintiffs' contributions were used for the donors' intended purposes.

The Court declines to rule on defendants' contention that plaintiffs' claim for conversion must fail, since defendants have failed to cite any authorities regarding the elements of a cause of action for conversion or to address which elements are lacking in this case. Furthermore, although it does not appear that plaintiffs and Straight entered into a written contract, it is not clear from the record whether any type of contract was created between the parties. Therefore, summary judgment on these issues is not appropriate.

### Case or Controversy

■ Defendants allege that plaintiffs cannot maintain this action because they have failed to allege the existence of a case or controversy. Rather, defendants contend that plaintiffs have only hypothesized

that Straight may divert the proceeds from the sale of the Milford property to unintended uses and have failed to demonstrate that they have suffered any harm or that they face the prospect of immediate harm.

The threshold determination in any lawsuit is whether plaintiff has established a case or controversy between defendant and himself within the meaning of Article III of the United States Constitution. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The Court's jurisdiction can be invoked only when the plaintiff himself has suffered "some threatened or actual injury resulting from the allegedly unlawful conduct." *Id.* at 499, 95 S.Ct. at 2205. A named plaintiff in a class action must show that the threat of injury is real and immediate rather than conjectural or hypothetical. *Sosna v. Iowa*, 419 U.S. 393, 402–03, 95 S.Ct. 553, 558–59, 42 L.Ed.2d 532 (1975).

Accepting as true plaintiffs' allegation that defendants intend to use proceeds from the sale of the Milford property for purposes other than those for which plaintiffs' donations were intended, plaintiffs have adequately shown the existence of an actual controversy. Therefore, the Court will not dismiss the case on the ground that no case or controversy exists.

### Conclusion

For the foregoing reasons, it is hereby ORDERED that the cross-motions for summary judgment be DENIED.

IT IS SO ORDERED.