**Fabe**
**v.**
**American Druggists' Ins. Co.**
*[Cite as 8 AOA 489]*

*Case No. 89AP-1192*
*Franklin County, (10th)*
*Decided December 13, 1990*

*James R. Rishel, Gurley, Rishel, Myers & Kopech, for Plaintiff-Appellee.*

*John J. Holland, for Defendants-Appellees, Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Workers' Compensation.*

*Eric A. Schaffer and Lauren S. Klett, Reed, Smith, Shaw & McClay; Nancy Manougian, Arter & Hadden, for Claimant-Appellant.*

WEST, J.

This appeal arises from the judgment of the Franklin County Court of Common Pleas, entered September 11, 1989, adopting the findings and recommendations of the referee.

The proceeding involves the rights and obligations of American Druggists' Insurance Company ("ADIC") in connection with:

(1) a bond issued by ADIC in favor of the Bureau of Workers' Compensation, Department of Labor and Industry of the Commonwealth of Pennsylvania ("Commonwealth"); and

(2) a separate letter of credit issued by Continental Illinois National Bank and Trust Company of Chicago ("Continental") in favor of ADIC.

The common thread linking the parties is Eazor Express, Inc. ("Eazor"), a now defunct Pennsylvania trucking company.

The facts are that Eazor applied to the Commonwealth to become a self-insured employer under the Pennsylvania Workers' Compensation Law. One of the conditions imposed by the Commonwealth was that Eazor provide a bond of surety in the amount of $500,000. On August 31, 1981, ADIC, as surety, issued the bond with Eazor as principal, in favor of the Commonwealth.

On April 10, 1981, Continental, at Eazor's request, established its Irrevocable Standby Letter of Credit No. 6134357 ("Letter of Credit") in the amount of $500,000 for the benefit of ADIC. The Letter of Credit was expressly made subject to the Uniform Customs and Practice for Documentary Credits (International Chamber of Commerce Publication No. 290, 1974 revision) ("UCP"). The Letter of Credit provided for payment to ADIC upon presentation of an appropriate sight draft, together with a statement that:

ADIC, as surety, has executed a bond or bonds on behalf of Eazor, as principal, and in favor of the Bureau of Workers' Compensation, Department of Labor and Industry of the Commonwealth of Pennsylvania, as obligee, in connection with the Self-Insurer's Worker's Compensation Bond, and that a claim has been made or a situation exists under which in the sole judgment of the surety a loss may be sustained, liability may exist, expense may be incurred, or loss or expense have been paid or accrued, under said bond or bonds, and that monies represented by ADIC's draft or drafts are required at the discretion of the surety for its protection under said bond or bonds.

The Letter of Credit further provided:

"Your acceptance of this Letter of Credit will constitute your agreement to pay us for the account of Eazor Express, Inc. any funds paid to you hereunder at any time and not eventually applied by you in reimbursement of loss incurred by you as a result of your execution of the aforesaid bond or bonds."

Although Continental's Letter of Credit expressly referred to the bond, the bond contained no reference to the Letter of Credit or its proceeds.

On January 23, 1984, Eazor entered Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the Western District of Pennsylvania. In August 1986, Eazor terminated all operations and a Chapter 11 trustee was appointed to liquidate and distribute Eazor's assets. This proceeding is still pending.

Pursuant to an Implementation Agreement dated August 23, 1984, Continental transferred to the Federal Deposit Insurance Corporation ("FDIC") all of Continental's claims and related rights against Eazor, along with all rights in all collateral relating thereto. This transfer was effected on September 26, 1984. Continental continued to administer this loan for the FDIC until November 1, 1988. Because the amount owed by Eazor to the FDIC exceeds the value of Eazor's assets, the FDIC will receive substantially all of the proceeds from the liquidation of Eazor's assets.

On April 30, 1986, ADIC was declared insolvent and ordered to be liquidated by the Court of Common Pleas of Franklin County, Ohio. George Fabe, in his capacity as Liquidator of ADIC ("Liquidator"), is now responsible for the liquidation and distribution of ADIC assets.

By letter dated July 31, 1987, the Commonwealth notified the Liquidator that Eazor had defaulted on its workers' compensation

obligations and made a claim under the bond. The Commonwealth demanded that the Liquidator immediately present a sight draft under the Letter of Credit for the entire $500,000 and within fifteen days remit such funds to the Commonwealth. The Commonwealth made no suggestion that it had actually incurred liability in the amount of $500,000 or any lesser amount.

By letters dated in August 1987, the Liquidator for ADIC presented a sight draft to Continental for $500,000. Continental honored the sight draft, only after reaffirming that the Liquidator was obligated under the terms of the Letter of Credit to return any funds not applied to a loss incurred in connection with the bond. Continental expressly denied that the Commonwealth was a third-party beneficiary of the Letter of Credit.

On or about October 12, 1988, the Commonwealth filed a motion with the Franklin County Court of Common Pleas seeking modification of the court's order alleging that proceeds of the Letter of Credit were not general assets of ADIC but, rather, were security held by ADIC for the sole benefit of the Commonwealth.

The trial court referred the matter to a referee. On June 8, 1989, a hearing was held. On August 7, 1989, the referee issued his report in which he concluded:

(1) the bond created an implied trust in favor of former employees of Eazor;

(2) the Commonwealth has a secured claim against the proceeds of Continental's Letter of Credit; and

(3) the Commonwealth is entitled to an immediate distribution in an amount equal to the existing claims of Eazor's former employees.

The trial court overruled objections to the referee's report and, by order entered September 11, 1989, adopted the findings and recommendations of the referee. The FDIC appeals from that order and raises the following assignments of error:

"1. The trial court erred in holding that the bond of American Druggists' Insurance Company created an implied trust in favor of former employees of Eazor Express, Inc. and its subsidiary.

"2. The trial court erred in holding that the Commonwealth of Pennsylvania has a secured claim against the proceeds of the letter of credit issued by Continental Illinois Bank and Trust Company of Chicago for the benefit of American Druggists' Insurance Company.

"3. The trial court erred in holding that the Commonwealth of Pennsylvania is entitled to an immediate distribution in an amount equal to the existing claims of Eazor's former employees.

"4. The trial court erred in denying the Federal Deposit Insurance Corporation's motion requesting an Order declaring that (a) the Commonwealth has no claim to the Letter of Credit or its proceeds; (b) the Commonwealth has no claim against American Druggists' Insurance Company or any of its assets except as an unsecured claimant; (c) the Commonwealth is not entitled to any distribution from American Druggists' Insurance Company until its claim has been fully determined; and (d) to the extent that the Liquidator does not or cannot distribute proceeds of the Letter of Credit to the Commonwealth, the Liquidator is obligated to return such funds to the Federal Deposit Insurance Company."

Appellant's first assignment of error challenges the trial court's adoption of the referee's finding that the surety bond created an implied trust in favor of Eazor's employees. The Commonwealth and the Liquidator assert that such a trust exists because the collateral provided to indemnify the surety is a fund available to satisfy the Commonwealth's claims under the bond. The FDIC argues that the implied trust theory is inapplicable because the collateral was provided, not by Eazor, the principal debtor, but by Continental, a third party.

The Commonwealth and the Liquidator invoke the general rule that a creditor can reach any collateral provided to the surety for the surety's payment or indemnity against payment to satisfy a judgment on an unpaid debt. *Henderson-Achert Lithographic Co. v. John Shillito Co.* (1901), 64 Ohio St. 236, 250. The general rule is founded upon the presumption that the collateral is the property of the principal debtor; because the principal debtor has allocated a portion of his property to this particular debt, it is fair to permit the creditor to reach the property and would be unfair to permit the debtor to obtain its return without satisfying the debt. *Id.* at 251.

The equitable factors that justify allowing a creditor to reach collateral in the hands

of the surety when the collateral is the property of the principal debtor are not necessarily present when the collateral belongs to a third party. See, *e.g., Leggett v. McClelland* (1884), 39 Ohio St. 624, 627. Accordingly, the general rule allowing a creditor to reach the collateral is applied only in limited circumstances when the collateral belongs to a third party. *Id.;* Restatement of the Law, Security (1941), Section 140(2). Thus, the ability of a creditor to reach the collateral depends in part on whether the collateral is the property of the principal debtor.

In general, "*** neither a letter of credit nor its proceeds are property of the debtor's estate. ***" See, *e.g., In re Air Conditioning, Inc.* (C.A.11, 1988), 845 F. 2d 293, 296 certiorari denied *sub nom. First Interstate Credit Alliance, Inc. v. American Bank* (1988), 488 U.S. 993; *In the Matter of Val Decker Packing Co.* (S.D. Ohio 1986), 61 Bankr. 831. This is because the bank, issuing a letter of credit acts as a principal rather than its customer's agent and is obligated to honor drafts presented by the named beneficiary of the credit from its own assets rather than its customer s assets. R.C. 1305.16 Official Comment; *Val Decker, supra.* The specific terms of the Letter of Credit in this case, however, call this proposition into doubt; the Letter of Credit requires the surety to return to the principal debtor any proceeds of the credit that are not applied to reimburse the surety's loss. Thus, collateral in the form of proceeds could be characterized as property of the principal debtor.

We need not decide, however, whether the collateral is the property of the principal debtor. In this proceeding, the creditor claims a right in the collateral that is derivative of some right of the surety.[1] See *Henderson-Achert, supra,* at 253-254. Regardless of who owns the collateral, the creditor can have no greater right in the collateral than the surety. *Id.* at 254; *Assets Realization Co. v. American Bonding Co.* (1913), 88 Ohio St. 216, 264-265.

The surety's right in the collateral depends on the terms of the covenant that established the fund. A right of action under a covenant of indemnification against loss accrues only when the indemnitee has suffered a lose within the scope of the covenant. *Henderson-Achert, supra,* at 254-255; *Firemen's Ins. Co. v. Antol* (1984), 14 Ohio App.

3d 428, 429. In contrast, a right of action under a covenant to pay the debt of another accrues when the debt matures and is unpaid. *Henderson-Achert, supra,* at 254-255; *Antol, supra,* at 429.

On its face, the Letter of Credit in this case provides that the credit is to protect the surety against loss under the bond. Although the surety is entitled to draw down the credit at its discretion if a loss is or may be incurred, it is entitled to retain the drawn-down funds only to the extent that these funds are actually applied in reimbursement of its loss under the bond. In short, the surety has no right to indemnity until it has incurred a loss. See, *e.g., Henderson-Achert, supra,* at 255.

The surety in this case has not paid any claim of the Commonwealth under the bond. Consequently, it has suffered no loss and has no right in the collateral. The Commonwealth can have no better right to the collateral than the surety. Thus, we conclude that the Commonwealth, claiming under the surety, has no right in the collateral.

The implied trust theory necessarily fails when the surety has no rights in the collateral. The implied trust at issue here is a constructive trust, a remedy for unjust enrichment, rather than a resulting trust, which seems to carry out the intent of the parties. *Bilovocki v. Marimberga* (1979), 62 Ohio App. 2d 169, 171-172. A constructive trust is:

"'*** [A] trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. ***'" *Ferguson v. Owens* (1984), 9 Ohio St. 3d 223, 225 (quoting 16 American Jurisprudence 2d (1975), 446 Trusts, Section 221.

Thus, a constructive trust may arise only against one who has a legal right to the property sought to be made a part of the trust. A constructive trust can therefore be imposed upon the surety only to the extent that it has a legal right in the proceeds of the credit. Because we conclude that the surety

has no such right, no constructive trust arises for plaintiff's benefit.

Although neither the surety nor the Commonwealth has a right in the collateral until the surety incurs a loss under the bond, a constructive trust nevertheless arose, for the benefit of Eazor, when the Liquidator drew down the credit. The terms of the credit permit the surety to retain only those proceeds of the credit that are applied to reimburse its loss under the bond and obligate the surety to return any proceeds not so applied to Continental for the account of Eazor. The surety would be unjustly enriched if it was permitted to retain proceeds not applied to reimburse its loss, so a constructive trust arises in favor of Eazor and its successor, the FDIC.

We sustain appellant's first assignment of error.

Appellant's second assignment of error challenges the trial court's adoption of the referee's finding that the Commonwealth has a secured claim against the proceeds of the credit. The Commonwealth argues that its claim arising under the bond was secured by the Letter of Credit, giving rise to a secured claim against the proceeds of the credit. The FDIC argues that the Commonwealth can have a secured claim against the proceeds only if an assignment of the proceeds has been made and that any such assignment is invalid because it does not comply with U.C.C. Article 9. The Liquidator further argues that the Commonwealth's claim is not a secured claim within the meaning of the Ohio insurance liquidation statutes.

The Ohio insurance liquidation statutes require that the assets of an insolvent insurer be distributed to classes of claimants based on the priorities of their claims. R.C. 3903.42. In addition to seeking such a distribution, a secured claimant may also look to its security. R.C. 3903.58. "Secured claim" is defined in R.C. 3903.01(O) as:

"*** [A]ny claim secured by mortgage, trust deed, security agreement, pledge, deposit as security, escrow, or otherwise [including judicial liens against specific assets) but not including special deposit claims or claims against assets. ***"

Thus, the Commonwealth can look to its security to satisfy its claim only if the claim was secured by one of the methods authorized by this statute.

The U.C.C. limits the methods by which a security interest in the proceeds of a Letter of Credit can attach. An assignment of the proceeds of a Letter of Credit must comply with the statutory requirements governing assignment of an account. U.C.C. Section 5-116; Ill. Rev. Stat. Ch. 26, para. 5-116; R.C. 1305.15. These requirements are:

"1. The collateral is in the possession of the secured party pursuant to agreement (a pledge) or the debtor has signed a security agreement which describes the collateral;

"2. Value has been given; and

"3. The assignor has rights in the collateral."

See U.C.C. Section 9-203(1); Ill. Rev. Stat. Ch. 26, para. 9-203(1); R.C. 1309.14. Thus, a security interest in the proceeds of a Letter of Credit may attach only by pledge or a security agreement.

Although we do not necessarily disturb the trial court's adoption of the referee's factual finding that an assignment of the proceeds was made, any such assignment is invalid for lack of compliance with the requirements set forth in the previous paragraph. The first requirement has not been met because the proceeds are not in the possession of the Commonwealth; rather, they are in the possession of the Liquidator as the successor to ADIC, the named beneficiary of the credit. Nor has there been any showing of a written security agreement signed by the debtor. The Commonwealth has not even alleged the existence of such an agreement. The third requirement also has not been met. For the reasons discussed earlier, the surety has no interest in the collateral until it incurs a loss under the bond. The surety has incurred no loss so it has no interest in the collateral.

Thus, any assignment of the proceeds of the credit fails for lack of compliance with the requirements for assignment of an account. The Commonwealth has not established a security interest in the proceeds either by pledge or a security agreement. Consequently, it does not have a secured claim as defined by R.C. 3903.01(O). We therefore sustain appellant's second assignment of error.

Appellant's third assignment of error asserts that the trial court erred in holding that the Commonwealth is entitled to an immediate distribution of the proceeds of the

credit in an amount equal to the existing claims of Eazor's former employees. The Commonwealth has no right to a distribution of the proceeds of the credit until the surety incurs a loss under the bond. Because the surety has not yet incurred a loss under the bond, we sustain appellant's third assignment of error.

Appellant's fourth assignment of error asserts that the trial court erred in denying its motion requesting an order declaring certain rights of the parties. Based upon the foregoing, we sustain this assignment of error in part and overrule it in part.

The trial court properly denied appellant's request for a declaration that the Commonwealth has no claim to the proceeds of the credit. The Commonwealth has rights in the proceeds, but such rights cannot exceed the rights of the Liquidator, as successor to the surety. The Liquidator has rights in the proceeds to the extent that a loss is incurred under the surety bond; the Commonwealth has a corresponding right. Although neither the Liquidator nor the Commonwealth has accrued any rights in the proceeds, it is possible that such rights may accrue. Thus, the trial court properly refrained from declaring that the Commonwealth has no claim to the proceeds.

The trial court improperly denied appellant s request for a declaration that the Commonwealth has no claim against ADIC or its assets except as an unsecured claimant. The Commonwealth's claim under the bond is unsecured. Its only claim against ADIC and its assets is therefore as an unsecured claimant.

The trial court properly denied appellant's request for a declaration that the Commonwealth is not entitled to any distribution from ADIC until its claim is fully determined. The Liquidator has exclusive authority to review, investigate, and value all claims filed in a liquidation. R.C. 3903.43. Presentation to the court of the Liquidator's recommendations regarding allowed claims is a prerequisite to the Liquidator's distribution of the insolvent insurer's assets. *Id.* The Commonwealth's claim has not been determined by the Liquidator. Thus, the Commonwealth is not entitled to any distribution until its claim is determined.

The trial court improperly denied appellant's request for a declaration that the Liquidator is obligated to return to the FDIC all proceeds of the credit that he does not or cannot distribute to the Commonwealth. The surety has rights in the proceeds of the credit only to the extent that it incurs a loss under the bond, and Commonwealth's rights can be no greater. If a loss is incurred under the bond, the proceeds may properly be paid either to the surety to reimburse a loss incurred by satisfying the Commonwealth's claim from its own assets, or directly to the Commonwealth, bypassing the need for the surety to pay the Commonwealth and seek reimbursement for its loss.

Any proceeds remaining after such a distribution, however, are not assets of ADIC. The Letter of Credit expressly provides that funds not applied to reimburse the surety's loss under the bond must be returned to the account of Eazor, whose interest has been succeeded by the FDIC. The Liquidator has no greater rights in the proceeds than ADIC, see R.C. 3903.18(A), whose rights are subject to the express terms of the Letter of Credit. Thus, any proceeds remaining after a distribution in compliance with the credit's terms are not the assets of ADIC and must be returned to the FDIC.

While the declaration sought by appellant was substantially correct, the trial court's denial of the request was proper. The requested declaration did not provide for a distribution to ADIC for its reimbursement. It provided only for a distribution to the Commonwealth. Because ADIC may be entitled to a distribution, the trial court properly denied appellant's request.

Appellant's first three assignments of error are sustained. Appellant's fourth assignment of error is sustained in part and overruled in part. The judgment of the trial court is reversed ana this cause is remanded for further proceedings in accordance with these findings.

*Judgment reversed and*
*cause remanded.*

McCORMAC and BRYANT, J.J., concur.

WEST, J., of the Logan County Court of Common Pleas, sitting by assignment in the Tenth Appellate District.

[1] The creditor does not claim a right to recover the proceeds from the surety because Continental improperly paid the proceeds to the surety. Nor does the creditor claim a right in the proceeds that is derivative of some right belonging to Eazor, the principal debtor, for such a claim properly must be brought in Eazor's bankruptcy proceeding.