DECISION AND JOURNAL ENTRY
The Lorain County Court of Common Pleas awarded $25,000 to Sharon Dobrinski as the named beneficiary on her husband's life insurance policy. Martha Beck, who had requested that the court impose a constructive trust on the proceeds in favor of her adult disabled son, Ronald Dobrinski, has appealed from the judgment.
Martha Beck has asserted that the trial court erred, as a matter of law, when it rejected her contention that Ronald Dobrinski, son of Robert Dobrinski, Sr., was entitled to the entire proceeds pursuant to a clause in her divorce decree from Robert Dobrinski, Sr.
 I
The parties stipulated to facts and exhibits in this case. Martha Beck was married to Ronald A. Dobrinski for thirty-three years. Fraternal twin sons were born to the Dobrinskis in 1957. The couple divorced in 1988, at which time each carried a $50,000 life insurance policy on his or her life. Their divorce decree contained the following provision:
 The parties further acknowledge that they are the holders of insurance policies with Midland Life Insurance Company; each shall retain their own policies with the children as equal beneficiaries thereunder with each party paying their own premium.
 Robert Dobrinski, Sr. maintained his policy with his sons as equal beneficiaries until 1992, when Robert Dobrinski, Jr. died. Shortly thereafter, Robert Dobrinski, Sr. substituted his wife Sharon Dobrinski, as a beneficiary in place of his deceased son Robert Dobrinski, Jr. She remained the equal beneficiary with Ronald Dobrinski until Robert Dobrinski, Sr.'s death in 1995.
Martha Beck, on the other hand, had made Robert Dobrinski, Jr. the sole beneficiary of her life insurance policy shortly before his death in 1992. After his death, she substituted Robert Dobrinski, Jr.'s widow as beneficiary in place of Robert Dobrinski, Jr. She later replaced Robert Dobrinski, Jr.'s widow, as beneficiary, with a friend of hers, and named another friend as secondary beneficiary. During her deposition testimony, Martha Beck explained that she was concerned about who would become Ronald Dobrinski's guardian following her death and that the beneficiary changes were related to her concern about providing continuing care for Ronald Dobrinski. Approximately six months after Robert Dobrinski, Sr.'s death, Martha Beck created an irrevocable supplemental needs trust for Ronald Dobrinski, which she named as beneficiary of her own life insurance policy.
Shortly after the death of Robert Dobrinski, Sr. Martha Beck requested, on behalf of Ronald Dobrinski, that Midland pay her the entire $50,000 proceeds from Robert Dobrinski, Sr.'s life insurance policy. At around the same time, Sharon Dobrinski also requested that Midland pay her $25,000 as named beneficiary. Midland Insurance Company paid Martha Beck $25,000 of the proceeds, but refused to pay either Martha Beck or Sharon Dobrinski the remaining $25,000, in light of the disputed claim to that portion.[1] Martha Beck deposited the insurance payment in the supplemental needs trust she had created for Ronald Dobrinski two months earlier.
 II
Even though Robert Dobrinski, Sr. named Sharon Dobrinski a beneficiary on his life insurance, Martha Beck has asserted that equity requires the court to impose a constructive trust on Sharon Dobrinski's contractual share in favor of Ronald Dobrinski.
In general, when an insured dies, the named beneficiary is entitled to the proceeds of the policy. Ferguson v. Owens
(1984), 9 Ohio St.3d 223, 225. Under limited circumstances an individual with a superior equitable right, by virtue of a divorce decree or separation agreement, may divest the named beneficiary of that right. Id. at 225-226. When a challenger demonstrates by clear and convincing evidence that he has a superseding equitable right to the proceeds, Hill v. Irons (1953), 160 Ohio St. 21,27-29, the courts are obligated to establish a constructive trust to "ensure that the insurance proceeds are paid to those who were to be named beneficiaries of an insurance policy by the terms of a separation agreement embodied in a divorce decree." Kelly v.Medical Life Ins. Co. (1987), 31 Ohio St.3d 130, paragraph two of the syllabus. Clear and convincing evidence has been defined as "that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
The asserted equitable right here arises out of a divorce decree. The divorce decree between Robert Dobrinski, Sr. and Martha Beck incorporated the separation agreement of the parties.[2] Prior to such incorporation, a separation agreement is a contract between the parties. See Wolfe v. Wolfe (1976),46 Ohio St.2d 399, paragraph four of the syllabus. To the extent that a separation agreement is incorporated in a judgment of divorce, the interpretation of the incorporated portion is based on principles of contract law. See, generally, Kelly, 31 Ohio St.3d 130. The primary principal of contract construction is to effectuate the intent of the parties. Skivolocki v. East Ohio Gas Co. (1974), 38 Ohio St.2d 244, paragraph one of the syllabus. Initially, the intent of the parties is to be discerned from the language that they chose to employ in creating their contract. Id. If the "language is unclear or ambiguous, or * * * circumstances surrounding the agreement invest the language * * * with a special meaning," the court may resort to extrinsic evidence. Kelly,31 Ohio St.3d at 132.
Martha Beck has brought this action as guardian of her adult son, who is under a legal disability. She has asserted her divorce decree requires that all of the proceeds of the insurance policies referred to in paragraph six go entirely to the survivor of her children with Robert Dobrinski, Sr., should one predecease the other. It is only appropriate to impose a constructive trust if the language of that paragraph, together with extrinsic evidence if necessary, clearly and convincingly establishes that the Dobrinskis intended that the entire proceeds would go to one son, should the other predecease either parent.
In their separation agreement, the parties agreed that "they are the holders of insurance policies with Midland Life Insurance Company" and that "each shall retain their own policies with the children as equal beneficiaries thereunder with each party paying their own premium." The language chosen by the parties is ambiguous. The reference to the policies is insufficient, without more, to identify the policies with which this clause is concerned. The clause does not indicate the size of the policies involved, nor does it indicate whether each party has a single policy or whether one or both of them have multiple policies. The phrase "each shall retain their own policies" can be read as either a direction to each to maintain his or her policy for an indefinite period in the future or merely as an articulation of property division, without future implications. Even read as the former, the language of the separation agreement does not define the duration of the obligation. The language of the clause does not direct the parties to make irrevocable the designation of the children as equal beneficiaries. As is obvious from this dispute, the language is silent as to what was to happen, should either of the sons predecease one or the other parent.
Because the language is ambiguous, we review the extrinsic evidence to assist in determining what the parties intended at the time they entered into the agreement. The parties agree that paragraph six refers to two $50,000 insurance contracts, one issued in the name of each parent. The contracts themselves were not made part of the record, and thus can offer no guidance as to what the parties intended when they drafted this portion of their separation agreement. Martha Beck agreed, in her deposition testimony, that they "essentially wanted to leave each of [their] sons a $50,000 inheritance." She distinguished this provision from the one preceding it, explaining that paragraph five addressed the parties' need to provide additional care for Ronald Dobrinski because of his disability; and explained that the purpose of paragraph six was to provide an equal "inheritance." She did not testify that the parties intended that if one son predeceased his parents that the other should be made sole beneficiary.[3]
To the extent that Martha Beck's own actions may be used to demonstrate her understanding of what the parties intended when they drafted the clause, it does not support her contention that if one child died the couple intended the other to receive the entire distribution. Martha Beck initially removed Ronald Dobrinski as beneficiary entirely, while Robert Dobrinski, Jr. was still living. Subsequently, she named two other beneficiaries, and a secondary beneficiary other than Ronald Dobrinski. Six months after Robert Dobrinski, Sr.'s death Martha Beck brought her own actions into conformance with what she has asserted is the correct interpretation of paragraph six. At that time, she had already requested the entire proceeds of Robert Dobrinski, Sr.'s life insurance policy, on Ronald Dobrinski's behalf, and Sharon Dobrinski had requested fifty percent of the proceeds. It is unclear when Midland informed Martha Beck that there was a conflicting request for a portion of the proceeds. Martha Beck testified that when she named as beneficiaries of her own policy persons other than her sons she did because she was concerned about who would care for Ronald Dobrinski after she died. She also testified that when she met with a trust attorney to set up the supplemental needs trust for her son that she "indeed was looking for a way to be sure that Ron was cared for."
We take as true her assertion that she named various beneficiaries other than Ronald Dobrinski in an attempt to ensure his continuing care. We also take as true that when she belatedly created the trust for Ronald Dobrinski that she also intended it to "be sure that Ron was cared for." According to Martha Beck's own testimony, providing continuing care for Ronald Dobrinski was not the purpose of paragraph six, but of paragraph five. According to Martha Beck, the purpose of paragraph six was to create an "inheritance" for their sons. As such, even Martha Beck's final act of creating a trust to care for Ronald Dobrinski into which the entire proceeds of her own life insurance would flow, gives little to no indication of what the parties intended when they created an "inheritance" provision as part of their separation agreement.
Neither the language alone, nor the language in conjunction with Martha Beck's testimony, is sufficient to create a firm belief or conviction that when Martha Beck and Robert Dobrinski, Sr. created their separation agreement they intended that one son should receive the entire proceeds of their insurance policies if one son predeceased either parent. The presumption that the named beneficiary is the rightful recipient of the proceeds of Robert Dobrinski, Sr.'s life insurance policy governs, in the absence of clear and convincing proof that Ronald Dobrinski has a greater equitable right to the proceeds, pursuant to the divorce decree. Martha Beck's assignment of error is overruled.
 III
Martha Beck's assignment of error is overruled because Beck has not demonstrated that Ronald Dobrinski has a greater equitable right to the entire proceeds of his father's life insurance policy than the individual his father named as beneficiary. The judgment of the trial court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________ WILLIAM R. BAIRD
SLABY, J., BATCHELDER, J., CONCUR.
[1] Midland was originally named as a party. It acknowledged that it owed $25,000, plus interest, to Robert Dobrinski, Sr.'s beneficiary, but declared itself unable to determine to whom it should be paid. It deposited the proceeds and interest with the court, and was dismissed as a party.
[2] The decree itself appears to be an order imposed on the parties by the court, despite its description by both parties as a divorce decree incorporating a separation agreement. Both parties have urged that, because a separation agreement is a contract, the divorce decree is subject to interpretation using principles of contract law. Because of the parties' de facto stipulation, we interpret the separation agreement as if it were a contract created by Robert Dobrinski, Sr. and Martha Beck. Because it is not necessary to the determination of this matter, we do not address any potential distinction between interpretation of a contractual clause that has been merged into a judgment, seeKelly, 31 Ohio St.3d 130, and the means for enforcing such a clause, see, generally, Harris v. Harris (1979), 58 Ohio St.2d 303; Wolfe v. Wolfe (1976), 46 Ohio St.2d 399, paragraph four of the syllabus.
[3] Martha Beck did testify that "under this paragraph" Ronald Dobrinski should be entitled to the entire proceeds. That testimony was followed by a discussion about the distinction between asking Martha Beck to draw a legal conclusion about the meaning of a particular clause and asking her to testify about what she and Robert Dobrinski, Sr. intended when they wrote the clause. Any testimony regarding Ronald Dobrinski's right to receive the entire proceeds was in the context of the former, not the latter.