OPINION
{¶ 1} Plaintiffs-appellants, Mychole B. Willis and Sabyl M. Willis ("plaintiffs"), appeal from the decision and judgment entry of the Franklin County Court of Common Pleas granting summary judgment in favor of defendant-appellee Jackson National Life Insurance Company ("Jackson"). For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} In September 1992, Melvin Willis, plaintiffs' natural father, completed a life insurance application from Jackson. He designated his wife at the time, Michelle V. Willis, as the primary beneficiary and named no contingent beneficiaries. In May of 1994, Melvin and Michelle Willis were divorced. The divorce decree ("decree") obligated Melvin Willis to maintain his current level of life insurance coverage with his children, Mychole Willis and Sabyl Willis, as the primary beneficiaries. Specifically, the decree stated "[p]laintiff [Melvin Willis] shall maintain his current level of life insurance with the children as primary beneficiaries for the term encompassing his child support."
 {¶ 3} Subsequent to the decree, Melvin Willis married Pamela Willis. In December 1995, Melvin Willis changed the primary beneficiary of the life insurance policy to Pamela Willis and designated the children as contingent beneficiaries, contrary to the decree. On September 25, 2000, Melvin Willis died. On or about October 17, 2000, Pamela Willis sent a signed claimant's statement to Jackson wherein she requested a lump sum distribution of the policy proceeds. Based on this statement and the fact that Pamela Willis was the named primary beneficiary, Jackson disbursed the proceeds to her on October 31, 2000 in the amount of $134,243.14.
 {¶ 4} On October 1, 2001, plaintiffs filed suit against Pamela Willis and Jackson. In their complaint, plaintiffs alleged that they were the rightful beneficiaries of the policy based on the decree, and Pamela Willis simply held the proceeds in trust for their benefit. Plaintiffs further alleged that Jackson had notice of plaintiffs' competing claim prior to Jackson's disbursement of the proceeds on October 31, 2000, and that it knowingly and willingly paid the proceeds to Pamela Willis despite such knowledge. Sometime thereafter, plaintiffs sought a default judgment against Pamela Willis for her failure to timely answer the complaint. The trial court granted this motion on June 10, 2002. Accordingly, plaintiffs may proceed against Pamela Willis for recovery of the entire value of the proceeds.
 {¶ 5} Jackson filed a motion for summary judgment asserting that it had no knowledge of any competing claims with regard to the policy at issue. In support of its argument, Jackson submitted the affidavit of H. Bradley Mercer ("Mercer"), the Director of Claims Administration at Jackson. Mercer stated that Jackson was not made aware of plaintiffs' claim to the proceeds, based on the decree, until after the proceeds were disbursed to Pamela Willis.
 {¶ 6} Plaintiffs countered the motion for summary judgment by producing the affidavits of Will Hammond ("Hammond"), the agent who wrote the policy at issue, and DeLeon Willis, plaintiffs' grandfather. Hammond averred that he was the agent who handled the change of beneficiary in 1995 to Pamela Willis. He tried to persuade Melvin Willis to name plaintiffs and Pamela Willis as equal beneficiaries, which advice Melvin Willis apparently disregarded. Hammond stated that on or about October 20, 2000, he called Jackson to notify it that there was something wrong with the policy. Further, Hammond notified Jackson of the actual decree on November 2, 2000, and faxed Jackson a copy of the decree on November 8, 2000. DeLeon Willis' affidavit established that Hammond had knowledge of the decree and the competing claims of plaintiffs. The trial court concluded that by Hammond's own admission, Jackson did not have notice of the decree until November 2, 2000; two days after the proceeds were disbursed to Pamela Willis. Based upon the admissible evidence, the trial court found that there were no genuine issues of material fact and granted Jackson's motion for summary judgment. Plaintiffs timely filed the instant appeal.
 {¶ 7} Plaintiffs assert the following assignment of error:
 {¶ 8} "The trial court misapplied the law of summary judgment in granting summary judgment to the Defendant-Appellee as genuine issues of material fact exist in this case which are in dispute and which should have been permitted to go before a jury for determination."
 {¶ 9} Appellate review of summary judgment motions is reviewed de novo. Helton v. Scioto Cty. Bd. of Commrs. (1997), 123 Ohio App.3d 158,162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates the following: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183. In the summary judgment context, a "material" fact is one that might affect the outcome of the suit under the applicable substantive law. Turner v. Turner (1993),67 Ohio St.3d 337, 340. When determining what is a "genuine issue," the court decides if the evidence presents a sufficient disagreement between the parties' positions. Id.
 {¶ 10} Further, when a motion for summary judgment has been supported by proper evidence, the nonmoving party may not rest on the mere allegations of the pleading, but must set forth specific facts, by affidavit or otherwise, demonstrating that there is a genuine triable issue. Jackson v. Alert Fire Safety Equip., Inc. (1991),58 Ohio St.3d 48, 52. If the nonmoving party does not demonstrate a genuine triable issue, summary judgment shall be entered against that party. Civ.R. 56(E).
 {¶ 11} Life insurance is a matter of contract. Once a valid contract of insurance is formed, it becomes the law between the parties and its terms are binding. 1 Couch on Insurance 3d (1997) Section 17:1. Proceeds from insurance policies are to be distributed according to the terms and provisions contained in the policy. White v. Ogle (1979),67 Ohio App.2d 35. Generally, the named beneficiary of a life insurance policy is to receive the proceeds upon the death of the insured. Ferguson v. Owens (1984), 9 Ohio St.3d 223, 225. However, there are circumstances where an equitable right to policy proceeds may be established based upon the deceased insured's contractual obligation to name a particular beneficiary or beneficiaries. Id. If an equitable right is established, a constructive trust may be imposed to satisfy the demands of justice. Id. at 225, quoting 76 American Jurisprudence 2d (1975) 446, Trusts, Section 221.
 {¶ 12} In this case, Jackson paid the proceeds of Melvin Willis' life insurance policy to the named primary beneficiary, Pamela Willis. The dispositive issue is whether Jackson had notice of the competing claim of plaintiffs, by virtue of the decree, prior to disbursement of the policy proceeds. If Jackson had notice, imposition of a constructive trust may be the proper remedy. Plaintiffs claim that Jackson had such notice. Jackson maintains that it did not. As stated previously, the trial court found that Jackson did not have knowledge of the decree and granted summary judgment in favor of Jackson.
 {¶ 13} To support its position that Jackson did not have knowledge until after disbursement of the proceeds, Jackson again offered the Mercer affidavit. As Director of Claims Administration at the time the proceeds were paid to Pamela Willis, Mercer had personal knowledge of the facts surrounding the policy at issue. See affidavit of Mercer at ¶¶ 2-3. Mercer stated that the primary beneficiary of the policy was changed to Pamela Willis in December of 1995, and that Jackson was notified of Melvin Willis' death on or about September 25, 2000. Id. at ¶ 6. On or about October 17, 2000, Jackson received a claimant's settlement statement signed by Pamela Willis. Id. at ¶ 7. On October 31, 2000, in accordance with the beneficiary designation, Jackson transferred the sum total of the proceeds to an account in Pamela Willis' name. Id. at ¶ 8. Mercer averred that Jackson had no knowledge of the decree until after it paid the proceeds to Pamela Willis. Id. at ¶ 9. Jackson claims that Mercer's affidavit clearly establishes that it did not have notice of any competing claim.
 {¶ 14} Since Jackson has supported its motion for summary judgment by proper evidence, plaintiffs, the nonmoving party, must set forth specific facts demonstrating that there is a genuine triable issue. Jackson, supra at 52. In support of its argument that Jackson had notice of plaintiffs' competing claim, plaintiffs provided the affidavits of two individuals: (1) Hammond, the Jackson agent who procured the life insurance policy at issue and changed the primary beneficiary to Pamela Willis in 1995; and (2) DeLeon Willis, plaintiffs' grandfather.
 {¶ 15} Hammond averred that he called Jackson subsequent to Melvin Willis' death to obtain the death claim form. See affidavit of Hammond at ¶ 6. He states that he informed Jackson's home office that the decedent trusted Pamela Willis to share the proceeds with the children. Id. at ¶¶ 7-8. Further, after Hammond received the claim form, he learned that Pamela Willis had obtained another claim form. Id. at ¶ 9. After learning this information, Hammond called Jackson on or about October 20, 2000, and informed it "that something was wrong with the claim." Id. at ¶ 10. On November 2, 2000, Hammond informed an agent of Jackson of the decree. Id. at ¶ 2. The agent informed Hammond that the company "would most likely go by the court order." Id. at ¶ 14. Further, on November 8, 2000, a copy of the decree was sent to Jackson's home office. Id. at ¶ 16.
 {¶ 16} Unfortunately for plaintiffs, neither Hammond's affidavit nor DeLeon Willis' affidavit establish a genuine issue of material fact. This court agrees with the trial court's conclusion that DeLeon Willis' affidavit adds nothing to resolve the issue of whether Jackson was put on notice of the decree and thereby notice of a competing claim prior to the disbursement of proceeds. It simply reiterates the fact of Hammond's knowledge that plaintiffs were potential beneficiaries.
 {¶ 17} Likewise, Hammond's affidavit does not establish that Jackson had notice prior to disbursement of the policy proceeds. While the affidavit could be construed as establishing that Jackson was put on notice of a "problem" with the life insurance policy, that problem could have been anything. This is particularly true in light of the fact that plaintiffs were actually listed on the policy as contingent beneficiaries. It is significant that Hammond testified that Jackson was made aware of the "decree" itself on November 2, 2000, two days after the policy proceeds were disbursed. Therefore, the affidavit does not establish that Jackson had notice of a competing claim.
 {¶ 18} Plaintiffs' attempt to rely on certain phone logs obtained from Jackson during discovery to establish notice prior to October 31, 2000 is equally unavailing. Although these phone records establish that Hammond called Jackson numerous times to discuss the policy, and also establish that Pamela Willis did not want Hammond involved in the matter, these records cannot be considered by the court. This court concludes, as did the trial court, that the phone logs were not properly authenticated. In order to be properly authenticated, Civ.R. 56(E) requires documents to be sworn or certified by affidavit and attached thereto. State ex rel. Shumway v. State Teachers Retirement Bd. (1996),114 Ohio App.3d 280, 287-288. " `Documents which are not sworn, certified, or authenticated by way of affidavit have no evidentiary value and shall not be considered by the trial court.' " Id. at 287, quoting Mitchell v. Ross (1984), 14 Ohio App.3d 75.
 {¶ 19} In the present case, DeLeon Willis' affidavit at ¶ 9 states "[a] copy of the phone log provided by Jackson National Life Insurance Company is attached hereto as Exhibit B." This is insufficient under the rule. The affidavit does not state that the phone logs are accurate and kept in the ordinary course of Jackson's business. Even if it did, DeLeon Willis is not the proper person to testify with respect to the phone logs in that he has no personal knowledge. Accordingly, the phone logs were not properly authenticated and will not be considered by this court.
 {¶ 20} In conclusion, plaintiffs have not established that there are any genuine issues of material fact to support their position that the trial court erred in granting summary judgment in favor of Jackson. Since plaintiffs have already obtained a default judgment against Pamela Willis, they may take action to recover the full value of the proceeds from her. Accordingly, plaintiffs' assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
BROWN and LAZARUS, JJ., concur.