FISCHBACH, Appellant,

v.

MERCURI et al., Appellees.

[Cite as *Fischbach v. Mercuri*, 184 Ohio App.3d 105, 2009-Ohio-4790.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23188.

Decided Sept. 11, 2009.

---

Gottschlich & Portune, L.L.P., Gary W. Gottschlich, and Martina M. Dillon, for appellant.

Thomas P. Whelley II and Susan D. Solle, for appellees.

FAIN, Judge.

{¶ 1} Plaintiff-appellant, Linda Fischbach, appeals from a summary judgment rendered in favor of defendant-appellee Roselyn Mercuri. Fischbach is the former spouse of a participant in the Ohio State Teachers Retirement System ("STRS"). Mercuri is the surviving spouse of the participant, who died without having retired from the system.

{¶ 2} Fischbach contends that the trial court erred in failing to recognize that a constructive trust arose by operation of law with regard to STRS funds held by Mercuri. Fischbach also contends that the trial court erred in finding that imposition of a constructive trust would violate Mercuri's due process rights. Finally, Fischbach contends that the trial court erred in failing to hold an evidentiary hearing to determine the percentage of funds belonging to Fischbach that remains in Mercuri's hands.

{¶ 3} We conclude that the trial court erred in rendering summary judgment in favor of Mercuri. Under the undisputed facts, a constructive trust arose by operation of law with regard to STRS funds distributed by the divorce decree and inequitably held by Mercuri. A constructive trust does not violate statutes relating to public retirement funds, because it is not imposed on the retirement fund. Instead, the constructive trust is being imposed upon the funds received by Mercuri on the basis of unjust enrichment, as a result of a wrongful act by her late husband, the plan participant. Imposition of a constructive trust does not violate Mercuri's due process rights, because she received both notice and an opportunity to be heard regarding the issue of whether a constructive trust should be imposed.

{¶ 4} *Cosby v. Cosby,* 96 Ohio St.3d 228, 2002-Ohio-4170, 773 N.E.2d 516, is distinguishable because in that case, unlike in this case, the divorce decree addressed only the issue of retirement benefits, not survivorship benefits.

{¶ 5} Because the record is not entirely clear with regard to the precise amount of benefits that have been paid and are currently being paid, the trial court will need to make a determination as to the amount to be placed in the constructive trust.

{¶ 6} Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

I

{¶ 7} Linda Fischbach and Joseph Mercuri divorced in August 1998, after almost 30 years of marriage. At the time, Joseph had vested retirement benefits in STRS. The separation agreement, which was adopted by the court as its order, provided as follows regarding the STRS benefits:

{¶ 8} "13. Division of Husband's State Teacher Retirement Benefits.

{¶ 9} "The parties acknowledge that the Husband currently has vested retirement benefits in the State Teacher's Retirement System. Further, the parties acknowledge that due to the applicable provisions of the Ohio Revised Code, that the parties are unable to divide the Husband's State Teachers Retirement Benefits pursuant to an appropriate Qualified Domestic Relations Order or another appropriate Court Order. Further, the parties acknowledge that as of June 30, 1997, the Husband is entitled to receive a monthly benefit from the State Teacher's Retirement System in the amount of Three Thousand Five Hundred Thirty–Five Dollars ($3,535.00). The Wife shall be entitled to receive from the Husband's benefits from the State Teachers Retirement System the amount of $1,767 per month of the Husband's monthly benefits when he retires and begins receiving his benefits. In the event that the Husband goes on disability, the Court shall retain jurisdiction to allow the Wife to make a claim. Further, if upon retirement, the Husband elects to receive a lump sum distribution of his State Teachers Retirement benefits, the Wife will be entitled to receive a portion of said lump sum distribution. The Wife's portion of said lump sum distribution shall be determined by dividing the number of years of the parties' marriage by the number of years of the Husband's participation in the State Teachers Retirement system. The resulting percentage would then be divided in half, with the result being the Wife's share of any lump sum distribution received by the Husband from his State Teachers Retirement system.

{¶ 10} "The Husband shall pay said amount, whether the monthly amount or the lump sum amount, directly to the Wife. Still further, if for any reason the State Teachers Retirement will not honor the Deduction Order concerning the Wife's share of the Husband's retirement benefit, then the Husband will pay directly to the Wife the sum of $1,767.50 of monthly retirement benefits from the State Teachers Retirement system beginning with the first month he receives benefits. Still further, the Husband shall elect the survivor annuity option concerning his State Teachers Retirement benefits and he shall designate the Wife as beneficiary of said survivor annuity up to the amount of said annuity benefits. Still further, the Husband shall elect a survivor benefit which survivor benefit shall pay to the Wife the amount of either the $1,767.50 for retirement [sic] for the remainder of her life.

{¶ 11} "Still further, if in the future the Ohio law or any Federal law is amended or enacted which would permit the Husband's retirement benefits to be divided by an appropriate Qualified Domestic Relations Order, or other Court order, then the parties agree to modify this provision of their Separation Agreement to permit a Court of competent jurisdiction to issue an appropriate Qualified Domestic Relations Order, or other Court order, to permit the direct payment of the Wife's [sic] of the Husband's retirement benefits to her. Further, each party will cooperate with the other party in the preparation, execution and submission of any further appropriate Qualified Domestic Relations Order, or other Court order, in regards to the division of the Husband's retirement benefits. Still further, the parties agree that the Common Pleas Court of Montgomery County, Ohio, Division of Domestic Relations, shall have continuing jurisdiction over this provision of the parties' Separation Agreement, in order to approve an appropriate Qualified Domestic Relations Order, or another Court order, if either of the two options becomes feasible for the division of the retirement benefits in the future."

{¶ 12} At the time of the divorce, Joseph had accumulated about 30 years of service credit in STRS. The final judgment and decree of divorce, adopting the separation agreement, was filed in August 1998. Approximately two months later, Joseph filed a "designation of beneficiaries prior to service retirement" with STRS. Instead of designating Fischbach as the primary beneficiary to receive survivor benefits in the event of his death before retirement, Joseph directed STRS to apply the statutory succession of beneficiaries, which did not include ex-spouses. Joseph then married defendant-appellee Roselyn Mercuri in June 2000. His marriage revoked the beneficiary designation on file, pursuant to R.C. 3307.562(B).

{¶ 13} In November 2003, Joseph filed another designation-of-beneficiary form with STRS. Joseph again failed to designate Fischbach as the primary beneficiary of his account in the event of his death before retirement. Instead, he named Roselyn Mercuri as the primary beneficiary, but failed to sign this beneficiary designation, as a result of which it was ineffective.

{¶ 14} Joseph did not retire, but continued to work and accumulate credit with STRS until he died at age 57, in 2005. Because Joseph had no valid beneficiary designation on file, STRS applied the statutory succession under R.C. 3307.562(C), which designates the surviving spouse as the primary beneficiary. Consequently, Mercuri began receiving 100 percent of Joseph's survivor benefits from STRS in August 2005. The amount of her benefits at the time of the lawsuit was approximately $4,500 per month.

{¶ 15} In March 2006, Fischbach filed suit against Mercuri individually, and as administratrix of Joseph's estate. The complaint included claims for constructive

trust, unjust enrichment, conversion, breach of contract, and an injunction. After both sides filed motions for summary judgment, the magistrate filed a decision rendering summary judgment in favor of Mercuri. The magistrate concluded that STRS benefits are governed exclusively by statutes, which require STRS to pay survivor benefits to the individual statutorily entitled to the benefit. In this case, the statutorily-entitled individual is the surviving spouse, because Joseph failed to designate a beneficiary prior to his death. The magistrate also relied on some Ohio cases that have rejected the imposition of a constructive trust in situations involving public retirement.

{¶ 16} Fischbach filed objections to the magistrate's report, which were subsequently overruled by the trial court. The trial court adopted the magistrate's decision and rendered summary judgment in favor of Mercuri.

{¶ 17} Fischbach appeals from the judgment of the trial court and raises three assignments or error.

## II

{¶ 18} Fischbach's first assignment of error is as follows:

{¶ 19} "The trial court erred in adopting the magistrate's decision which failed to recognize the constructive trust arising by operation of law in appellant's favor over her funds in the possession of appellee."

{¶ 20} Under this assignment of error, Fischbach contends that the magistrate and trial court incorrectly characterized the appropriate issue. Fischbach points out that the magistrate initially concluded that the issue is whether the court may impose a constructive trust on STRS survivor benefits. The magistrate and trial court then focused on the "source" of the res—STRS—rather than on the fact that a constructive trust is imposed on the recipient of funds that equitably belong to another, but are paid to the recipient as the result of a third party's wrongful act.

{¶ 21} Fischbach also notes that the parties to the divorce took extraordinary measures to ensure that she received her fair share of the benefits that were earned during the parties' 30–year marriage, by providing for all conceivable scenarios regarding the STRS benefits: retirement with a pension option; retirement with a "lump sum" option; disability; and death before retirement. Finally, Fischbach contends that the trial court erred in disregarding a recent case that imposes a constructive trust on Public Employees Retirement System ("PERS") survivor benefits. In contrast, Mercuri relies on a 2002 Ohio Supreme Court case and its progeny, which reject imposition of constructive trusts on the benefits of public employees.

{¶ 22} Before addressing these matters, we note that we review summary judgment decisions de novo, "which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, at ¶ 16. "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers Metro-Parks* (1999), 134 Ohio App.3d 754, 760, 732 N.E.2d 422. The parties in the case before us do not appear to disagree about the facts; they do dispute the proper interpretation of the law.

{¶ 23} As a starting point for discussion, the case on which Mercuri relies is *Cosby v. Cosby*, 96 Ohio St.3d 228, 2002-Ohio-4170, 773 N.E.2d 516. In *Cosby*, a divorce decree provided that upon the husband's retirement, the wife would receive 40 percent of the husband's STRS fund, with the husband guaranteeing that the wife would receive at least $1,000 per month. Id. at ¶ 3. No provision for survivorship benefits was made.

{¶ 24} The husband did not retire from STRS, but continued working until he died. He also did not designate his ex-wife as a beneficiary on the fund. As a result, his surviving spouse qualified as the statutory beneficiary, and the ex-wife did not receive any benefits. Id. at ¶ 4. The ex-wife then filed an action against the surviving spouse, claiming unjust enrichment, and asking for imposition of a constructive trust. Id. at ¶ 5. After a bench trial, the trial court held that the divorce award was unambiguous and was triggered only by the husband's retirement. Id. at ¶ 6. The court of appeals disagreed, reasoning that the ex-wife's percentage of the retirement account was part of the property division and that the law on that point, rather than the parties' intent, was dispositive. The court of appeals also found the surviving spouse's retention of the entire benefit inequitable and supported imposition of a constructive trust. Id. at ¶ 8.

{¶ 25} On appeal, the Supreme Court of Ohio reversed the decision of the court of appeals. The Supreme Court noted that benefits do not vest until STRS grants retirement, and STRS is statutorily prohibited from paying benefits until a member has actually retired. Id. at ¶ 11–15. Furthermore, a deceased member's designated beneficiary has the right to a survivor benefit, unless no beneficiary has been designated. In that case, the surviving spouse is the first person who is statutorily entitled to the benefit. Id. at ¶ 12.

{¶ 26} In reversing the decision of the court of appeals, the Supreme Court concluded that the court of appeals' analysis had "blurred the statutory distinc-

tion between retirement and survivor benefits." Id. at ¶ 17. The Supreme Court stressed:

{¶ 27} "[T]he appellate court failed to examine the statutory nature of the STRS benefits. In the divorce decree, Faye Cosby was awarded a portion of her former spouse's *retirement* benefits. Those benefits never vested. Instead, upon the death of Carel Cosby, STRS was required to pay *survivor* benefits to Bonnie Cosby.

{¶ 28} "STRS benefits are governed exclusively by statute. Bonnie Cosby, as the qualified statutory beneficiary of Carel Cosby's STRS account, is currently receiving or has received survivor benefits under R.C. 3307.562. The court of appeals' decision imposing a constructive trust over a portion of Bonnie Cosby's benefits for the benefit of Faye Cosby is contrary to the statutory mandates of STRS. While we sympathize with Faye Cosby's situation, we are bound by the statutory mandates of the STRS and cannot ignore their requirements. Although we may not like the result, a different solution lies only with the General Assembly." (Emphasis sic.) Id. at ¶ 18–19.

{¶ 29} A number of appellate districts have subsequently applied *Cosby* to similar situations. In *Ohio Pub. Emp. Retirement Sys. v. Coursen,* 156 Ohio App.3d 403, 2004-Ohio-1229, 806 N.E.2d 197, the decree awarded the wife one-half of the marital portion of the husband's Ohio PERS account. The decree also ordered the husband to select a survivor benefit and to designate the wife as the irrevocable beneficiary of the survivor benefits. Id. at ¶ 2. The husband remarried, continued to work until he died, and did not designate his ex-wife as a beneficiary. Id. at ¶ 3. The trial court added PERS as a party and ordered PERS to pay the ex-wife survivor benefits as if her ex-husband had elected her as the irrevocable beneficiary. Id.

{¶ 30} On appeal, the Ninth District Court of Appeals reversed. The Ninth District agreed that the ex-husband had agreed to designate his ex-wife as an irrevocable beneficiary of his survivor benefits. Nonetheless, the Ninth District held that the statutory requirements must be strictly followed. The Ninth District also held that it could not say the ex-wife was entitled to receive the survivor benefits. Id. at ¶ 5. When making this latter remark, the Ninth District cited *Cosby,* without discussion. Id. The issue of a constructive trust was not mentioned, as PERS was the only party in the case other than the ex-wife.

{¶ 31} Similarly, in *Schrader v. Schrader,* Hocking App. No. 03CA20, 2004-Ohio-4104, 2004 WL 1752819, a divorce decree provided that a wife was entitled to $58,000 from her husband's PERS account. The decree required the husband to designate his wife as a beneficiary on his account for that amount, and specified that if he failed to do so, she would have a claim on his account. Id. at

¶ 9. Again, the husband failed to comply, and died before retiring. The ex-wife filed a claim against the estate for the amount to which she was entitled, but the estate was insolvent and the claim was not satisfied. Id. at ¶ 10.

{¶ 32} The ex-wife then sued the husband's widow, claiming breach of contract and unjust enrichment. Id. at ¶ 11. After the trial court reluctantly dismissed the action based on *Cosby*, the ex-wife appealed, arguing that *Cosby* was not controlling because it did not involve contractual obligations, such as the provision for the claim on the husband's estate. Id. at ¶ 14. The Fourth District Court of Appeals disagreed, concluding that even if the divorce decree were a contract, the ex-wife could not be a beneficiary, because she was a party. In addition, the claim would be against the ex-husband's estate, because he was the other party to the agreement. Id. at ¶ 26–27.

{¶ 33} The Fourth District further concluded that *Cosby* applied, stating that "[t]he gist of the holding in *Cosby* is that divorce proceedings could not circumvent the statutory provisions for the distribution of death benefits from public pensions. * * * That statement of public policy is the same regardless of the particular wording of the divorce decree." Id. at ¶ 28, citing *Cosby*, 96 Ohio St.3d 228, 2002-Ohio-4170, 773 N.E.2d 516, at ¶ 15–19. Like the trial court, the Fourth District expressed sympathy for the ex-wife's plight, but concluded that it was constrained to apply the law as it exists, and that relief, if any, must come from the General Assembly. Id. at ¶ 29.

{¶ 34} The Seventh District Court of Appeals reached the same result in a situation involving very similar facts. See *Snyder v. Snyder*, Jefferson App. No. 04 JE 16, 2004-Ohio-7216, 2004 WL 3090237. In *Snyder*, the Seventh District noted that prior to January 1, 2002, common pleas courts faced with the present situation had two options—to read the statute strictly and deny benefits, or to impose a constructive trust. Id. at ¶ 18. The trial court had used the latter approach, by making PERS a constructive trustee for the funds owed to the ex-wife. Id. at ¶ 7.

{¶ 35} The Seventh District noted that new statutes, R.C. 3105.80 et seq., were enacted effective January 1, 2002, and would allow ex-spouses to collect benefits without the application of principles of equity. Under the new statutes, when a trial court issues an order requiring payments from a public retirement program to an alternate payee, the court is to require that payments be made in accordance with and subject to limitations in R.C. 3105.82 to R.C. 3105.90. Id. at ¶ 19–21. Thus, an ex-spouse could be paid by a public retirement system as an alternate payee.

{¶ 36} The decree in *Snyder* was issued after the new statutes became effective, but the decree did not contain the requirements that they outlined. Id. at ¶ 23. Because the statutory requirements had not been not followed, the

Seventh District then considered whether principles of equity should apply to the statutory mandates of distribution for the public system in question (PERS). Id. Relying on *Cosby* and *Coursen*, the Seventh District concluded that the statutory mandates of distribution must be followed and that the trial court had erred in creating a constructive trust instead of following the statutory mandates. Id. at ¶ 30. The Seventh District also noted that the statutes existed at the time of the divorce, and that the ex-wife knew that her ex-husband had very young children (born out of wedlock) when the decree was filed. Therefore, the ex-wife could easily have discovered that she would not receive survivor benefits unless she complied with the new statutes. Id. at ¶ 31.

{¶ 37} Subsequently, the Fifth District Court of Appeals found that *Cosby* was not controlling, because the ex-wife in the case had been awarded " 'one-half the benefit' " of her ex-husband's pension as opposed to one-half of his "retirement benefits." *Dayton v. Dayton*, Stark App. No. 2004CA00388, 2005-Ohio-2722, 2005 WL 1301390, at ¶ 11. Fischbach urges us to follow this reasoning and to distinguish *Cosby*, because the agreement in the case before us awards Fischbach both retirement and survivor benefits.

{¶ 38} *Dayton* is not particularly instructive, because it involves a private pension plan, not a public retirement plan governed by statute. Id. Statutory mandates are a distinction that is stressed in *Cosby* and the other cases we have discussed. Of note, however, is the fact that the Fifth District later applied the same reasoning in a case that involves a public retirement plan.

{¶ 39} That case is *Leslie v. Johnston*, Licking App. No. 2006–CA–00114, 2007-Ohio-2901, 2007 WL 1696967. The parties in *Leslie* were divorced in 1998 and agreed that the husband would designate the wife as an irrevocable and sole beneficiary of PERS preretirement survivor benefits that would be paid if he died before retiring. Id. at ¶ 7. The husband agreed to submit documentation to the wife to prove that he had complied with this requirement. He also agreed to complete a new PERS beneficiary designation within seven days of any and all remarriages, to designate his ex-wife as the irrevocable and sole beneficiary, and to provide his ex-wife with documentation that a new designation form had been filed. Id.

{¶ 40} The divorce decree also contained provisions detailing the husband's agreement to take certain actions if he elected to receive a lump-sum payment on retirement, if he received monthly benefits, or if the ex-wife predeceased him. Id. at ¶ 8–10. After the divorce, the husband remarried and retired, electing to receive a pension during his lifetime and to have his beneficiary receive 10 percent survivor benefits. Id. at ¶ 12. Rather than naming his ex-wife as the 50 percent beneficiary, as required, he made his new wife the beneficiary. Id. His excuse for his actions was that he "forgot." Id.

{¶ 41} The trial court held the ex-husband in contempt and created a constructive trust over his PERS account. The court ordered the ex-husband to execute a division-of-property order ("DOPO") directing PERS to pay the ex-wife $850 a month and to designate her as beneficiary of his $17,000 life insurance policy. These amounts were then to be used to establish an annuity for the ex-wife. Id. at ¶ 18. In addition, the trial court joined the current wife as a party and ordered her to pay $1,033 per month to the ex-wife in the event that both women survived the ex-husband. Id. at ¶ 19.

{¶ 42} On appeal, the Fifth District Court of Appeals concluded that the case was more like *Dayton* than *Cosby*. Id. at ¶ 31. The Fifth District stated:

{¶ 43} "In *Cosby*, the divorce decree provided for decendant's [sic] ex-wife Faye to receive a portion of her ex-husband's STRS retirement benefits upon his retirement. The decedent died before he retired, and thus STRS never paid any retirement benefits. The Court found retirement benefits are different from survivor benefits and Faye had no claim on the survivor benefits. Thus there was no res upon which the court could impose a constructive trust.

{¶ 44} "In *Dayton v. Dayton*, Stark App.2004CA00388, 2005-Ohio-2722, this court discussed *Cosby* as it impacted upon a case quite similar to the case at bar. In *Dayton*, the terms of the separation agreement between Patricia and Danny provided Patricia would share in Danny's retirement benefits. Danny died before he could retire, and his second wife received the survivor benefits. We found a constructive trust is an equitable remedy which may be imposed when property has been acquired 'in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest,' *Dayton* at paragraph 8, citations deleted. This court permitted a constructive trust over the pension benefits because Patricia's claim was for 'retirement benefits' which would include both retirement and survivorship payments. *Dayton* at [¶ ]12. Thus unlike *Cosby* some of the benefits Patricia claimed survived Danny's premature death.

{¶ 45} "We find the instant case more like *Dayton* and clearly distinguishable from *Cosby* in that here, the benefits in which appellee has an equitable interest may yet be paid if Rosa survives appellant.

{¶ 46} "The parties agree PERS is governed by the Ohio Revised Code, and it is not permitted to change an election after the retirement date unless certain specific conditions are met. This only means the court cannot issue an order to PERS to change the designation of Rosa as appellant's survivor, and cannot order PERS to pay benefits to appellee. The trial court may impose a constructive trust over any benefits PERS actually pays to Rosa and may order her to turn the benefits over to appellee." Id. at ¶ 29–32.

{¶ 47} Because the Fifth District concluded that the current wife could not be ordered to pay more than she actually received from PERS, the decision was reversed and remanded for entry of an appropriate order. The court also remanded that case to allow further evidence that would accurately identify the extent of the ex-wife's damages and for imposition of an award that would restore her share of the marital benefits. Id. at ¶ 40.

{¶ 48} Fischbach contends that we should follow the reasoning applied in *Leslie*. In contrast, Mercuri contends that we should reject *Leslie* and should follow the three appellate districts that have applied *Cosby*. Mercuri also distinguishes *Leslie* on two grounds. First, Mercuri notes that *Leslie* involves PERS benefits, which may have statutory provisions that differ from those governing STRS. In addition, Mercuri stresses that the ex-husband in *Leslie* was alive at the time the action for a constructive trust was brought.

{¶ 49} These distinctions are not persuasive. As an initial matter, we note that *Leslie* involves two separate remedies. The trial court ordered the ex-husband to execute a DOPO, directing PERS to pay his ex-wife $850 per month. This is consistent with the statutory scheme in R.C. 3105.80 et seq., which became effective in 2002 and allows public retirement systems to pay alternate payees. There would be no distinction between PERS and STRS in this regard, as R.C. 3105.80 et seq. applies to both PERS and STRS, as well as other public retirement systems in Ohio. See R.C. 3105.80(F). Furthermore, even though the ex-husband in *Leslie* was still alive at the time of the action, the constructive trust remedy was imposed against his current wife with regard to benefits she would receive after his death. Therefore, *Leslie* is not distinguishable on the bases Mercuri suggests.

{¶ 50} We also note that at least one appellate district has deviated from its prior approach. Specifically, the Ninth District Court of Appeals adopted a different approach subsequent to its decision in *Coursen*. In *Romans v. Romans*, Summit App. No. No. 23181, 2006-Ohio-6554, the Ninth District considered a situation in which the parties' 1999 divorce decree divided their state of Ohio pension plans and designated the ex-spouse as the surviving spouse in the event of death. After the divorce, but before the husband retired, Ohio law was changed to allow a DOPO for public pension plans. Id. at ¶ 3.

{¶ 51} The husband initially complied with the divorce decree by naming his ex-wife as the beneficiary for his pension benefits. Id. at ¶ 4. He subsequently remarried and retired, but he did not change the beneficiary designation after his second marriage. Id. at ¶ 4. When the husband retired, he learned that he could not split beneficiaries, and could not list a beneficiary other than his current wife without her consent. His current wife, however, refused to consent. Id. at ¶ 5. When the ex-wife learned that she was not listed as a beneficiary, she filed a

motion for contempt and also moved to add the current wife as a third-party defendant. Id. at ¶ 6.

{¶ 52} The trial court denied the motion for contempt, but imposed a constructive trust on the current wife with regard to the survivorship benefits of the STRS pension. Id. On appeal, the Ninth District Court of Appeals affirmed. The Ninth District concluded that the contempt motion was properly denied, based on impossibility, because there was no plan in existence at the time of the husband's retirement that would allow him to designate his ex-wife as a beneficiary without his current wife's consent. Id. at ¶ 14–16. In addition, R.C. 3105.80 et seq. allow domestic relations courts to enter DOPOs regarding divorced parties' retirement plan.

{¶ 53} But "the legislature limited DOPOs to retirement benefits by terminating the alternate payee's rights to benefits upon either the death of the participant or the alternate payee, whichever occurs first. R.C. 3105.86. Accordingly, the statute does not provide an alternate payee a survivorship right in a participant's STRS benefits." Id. at ¶ 13.

{¶ 54} Nonetheless, the Ninth District concluded that the trial court had properly imposed a constructive trust on 34.8 percent of the monthly STRS survivorship benefits that the current wife would receive upon the husband's death. Id. at ¶ 22–23. The Ninth District stated as follows in this regard:

{¶ 55} "As noted above, R.C. 3105.86 eliminates Appellant's survivorship rights to Appellee's pension. The trial court and this Court both recognize that Appellant and Appellee bargained for survivorship benefits in their Divorce Decree. While the statute clearly prohibits Appellant from receiving survivorship benefits from the pension plan, it does not prevent Appellant from receiving her share of the survivorship benefits from Maryann Romans through a constructive trust. Further, Appellee acknowledges in his brief that the constructive trust is an equitable approach to implement the terms of the Divorce Decree and thus did not cross-appeal the trial court's imposition of the constructive trust. While we agree that the constructive trust leaves the possibility that Appellant will not be made whole should Maryann Romans predecease Appellant, the constructive trust is the best possible solution to ensure that Appellant receives her bargained for survivorship rights despite the statutory prohibition of R.C. 3105.86." Id. at ¶ 23.

{¶ 56} We agree with the approach taken by the Fifth and Ninth Appellate Districts. Initially, we note that there are a number of distinctions between *Cosby* and the case before us. In *Cosby,* the Supreme Court of Ohio did not even consider R.C. 3105.80 et seq., because those statutes were not in effect when the pension participant in *Cosby* died. See *Cosby,* 96 Ohio St.3d 228, 2002-Ohio-4170, 773 N.E.2d 516, at ¶ 4 (noting that the ex-husband died in 1997, which is well before the January 2002 effective date of R.C. 3105.80 et seq.). More important-

ly, *Cosby* relied on the distinction between "retirement benefits" and "survivor benefits." The decree in *Cosby* had ordered the division of only "retirement benefits," which had not vested at the time of the ex-husband's death. Id. at ¶ 18. In the case before us, the separation agreement and decree deal with various contingencies, including retirement, disability, a lump-sum option, and death before retirement.

{¶ 57} As Fischbach points out, the constructive trust is not being imposed on STRS and therefore does not impact the statutory scheme. The constructive trust is being imposed on funds in the hands of a party who has been unjustly enriched. As the Supreme Court of Ohio has stated:

{¶ 58} "A constructive trust is a ' "trust by operation of law which arises contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, *or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy.* It is raised by equity to satisfy the demands of justice." ' * * * A constructive trust is considered a trust because ' "[w]hen property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee." ' * * *

{¶ 59} "A constructive trust is an equitable remedy that protects against unjust enrichment and is usually invoked when property has been obtained by fraud. * * * '[A] constructive trust may also be imposed where it is against the principles of equity that the property be retained by a certain person even though the property was acquired without fraud.' " (Emphasis added.) *Estate of Cowling v. Estate of Cowling*, 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, at ¶ 19.

{¶ 60} In *Cowling*, the Supreme Court of Ohio approved imposition of a constructive trust on stocks and assets in brokerage accounts that were transferred to the plaintiff's stepchildren by their father, in violation of the plaintiff's marital and joint interest, even though there was no evidence that the stepchildren had done anything improper. Id. at ¶ 2–3. Likewise, in *Dice v. White Family Cos.*, 173 Ohio App.3d 472, 2007-Ohio-5755, 878 N.E.2d 1105, we held that the plaintiffs had satisfied the common law elements for an unjust-enrichment claim and imposition of a constructive trust against parties who had committed no wrongdoing but were the beneficiaries of funds wrongfully taken from the plaintiffs by a third party. Id. at ¶ 56–60.[1]

---

1. We ultimately concluded that the plaintiffs could not pursue their unjust enrichment claim due to UCC principles regarding holders in due course. 173 Ohio App.3d 472, 2007-Ohio-

{¶ 61} The divorcing parties in this case agreed that Joseph would designate Fischbach as the beneficiary of his survivor annuity and would elect a survivor benefit that would pay Fischbach $1,767.50 monthly for the remainder of her life. The parties also agreed that if Ohio law were subsequently amended to permit Joseph's retirement benefits to be divided by an appropriate QDRO or other court order, the separation agreement would be modified. And finally, the parties agreed that the trial court would retain jurisdiction over this provision in the separation agreement to approve an appropriate court order.

{¶ 62} After the decree and separation agreement were filed, Ohio law was amended to allow courts to issue DOPOs that can divide public retirement benefits. As was noted in *Romans*, DOPOs are limited to retirement benefits, because the alternate payee's rights to benefits terminate under R.C. 3105.86 upon the death of the pension participant or the alternate payee, whichever occurs first. 2006-Ohio-6554, 2006 WL 3616708, at ¶ 13. Bargained-for survivorship benefits may be received, however, not through direct payments by the public retirement fund, but through a constructive trust equitably imposed on property in the hands of a private party. Id. at ¶ 23.

{¶ 63} "Prior to retirement, the participant may designate whomever he wishes as his beneficiary as there is not spousal consent required for the election of a beneficiary. R.C. 3307.562(B). This beneficiary designation is only valid prior to retirement." *Romans v. Romans*, 2006-Ohio-6554, ¶ 11. Thus, Joseph could have designated Fischbach as his beneficiary at any time before his death, and that designation would have been effective to establish Fischbach as his beneficiary for survivorship benefits, because Joseph died before retiring. And Joseph was ordered to designate Fischbach as his beneficiary under the divorce decree. Therefore, his failure to do so was wrongful, and Mercuri received, and continues to receive, survivorship benefits as a result of Joseph's wrongful failure to have designated Fischbach as his beneficiary. As a result, Fischbach's receipt of these benefits is the inequitable result of Joseph's wrongful act (or omission to act), and the imposition of a constructive trust is an appropriate equitable remedy.

{¶ 64} Fischbach has also alleged error in the trial court's failure to consider the various claims that were brought for breach of contract. We note that Fischbach sued Mercuri individually and as administratrix of Joseph Mercuri's estate. Even under cases applying *Cosby*, Fischbach would appear to have a claim against the estate. See *Schrader*, 2004-Ohio-4104, 2004 WL 1752819, at ¶ 27, and *Hansford v. Pub. Emp. Retirement Sys.*, 170 Ohio App.3d 603, 2007-Ohio-1242, 868 N.E.2d 708, at ¶ 15. Therefore, the trial court erred in failing to

5755, 878 N.E.2d 1105, at ¶ 61. This conclusion is irrelevant for purposes of the case before us.

consider the claims brought against Mercuri in her capacity as administratrix of the estate.

{¶ 65} We conclude that the trial court erred in refusing to impose a constructive trust on funds held by Roselyn Mercuri. Fischbach's first assignment of error is sustained.

### III

{¶ 66} Fischbach's second assignment of error is as follows:

{¶ 67} "The trial court erred in adopting the magistrate's decision which found that imposition of a constructive trust would violate appellee's procedural due process rights."

{¶ 68} Under this assignment of error, Fischbach contends that the trial court and magistrate erred in concluding that imposition of a constructive trust would violate Mercuri's procedural due process rights. The trial court and magistrate both found that the divorce decree could not be enforced against Mercuri because she was not a party to the divorce and had no opportunity to be heard on the subject of the benefits.

{¶ 69} In reaching this holding, the magistrate relied on a footnote from *Schrader*, in which the Fourth District Court of Appeals stated:

{¶ 70} "We also parenthetically note that, to make the divorce decree binding on appellee when she was not a party to the divorce action and received neither notice nor an opportunity to be heard, would violate her procedural due process rights. See *Shiltz v. Shiltz* (Mar. 16, 1982), Highland App. No. 453[, 1982 WL 3401] (holding that both state and federal law are 'legion' in enunciating the principle that due process requires notice and an opportunity to be heard)." *Schrader*, 2004-Ohio-4104, 2004 WL 1752819, at ¶ 26, fn. 6.

{¶ 71} Fischbach contends that these due process comments do not apply, because her rights to a portion of the retirement funds or income stream triggered by Joseph's death vested at the time of the divorce decree. The portion of the funds that remains after the deduction for Fischbach's portion belongs to someone else. In this case, that someone is Mercuri, because she is the only other claimant to the funds. Fischbach also contends that the due process comments in *Schrader* are dicta because they are not necessary to the court's holding in the case. Finally, Fischbach notes that the case relied on by the Fourth District (*Shiltz*) is a contempt action and has nothing to do with the situation at hand.

{¶ 72} Taking the latter point first, we agree that *Shiltz* does not provide a basis for granting due process rights to Mercuri in connection with the prior

divorce decree. *Shiltz* involves a contempt case that was originally brought against a husband who had failed to pay support. The husband was initially sentenced, and the sentence was stayed, contingent upon his payment of support. The husband subsequently filed a motion to reduce support due to unemployment and attached an affidavit from his former wife, who consented to the reduction.

{¶ 73} At the hearing on the motion for reduction of support, the magistrate sua sponte reinstated the suspended sentence because the husband had failed to comply with the terms of the suspension. The Fourth District Court of Appeals reversed, holding that the trial court had deprived the husband of procedural due process by failing to notify him that his violation of the suspension order would be addressed at the motion hearing. See *Shiltz v. Shiltz* (Mar. 16, 1982), Highland App. No. 453, 1982 WL 3401.

{¶ 74} We agree with the holding in *Shiltz,* but we do not agree with the Fourth District's subsequent application of the due process requirement in *Schrader.* Constructive trusts differ from actions for contempt. Contempt actions are brought directly against a party who has violated a court order previously imposed against the party. In contrast, constructive trusts are generally imposed upon parties who are not normally or directly part of an original transaction. Instead, they have received property that belongs to another, typically by transfer of assets that belong to, or are claimed by, one of the parties to the original transaction.

{¶ 75} We also conclude that due process is being accorded in the case before us, because the recipient of the funds has had notice and an opportunity to be heard in court on the issue of whether a constructive trust should be imposed. To hold otherwise would be inconsistent with the purpose of constructive trusts.

{¶ 76} As was noted earlier, constructive trusts are imposed where a party " ' "who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." ' " *Estate of Cowling,* 109 Ohio St.3d 276, 2006-Ohio-2418, 847 N.E.2d 405, at ¶ 18. Unlike a contempt situation, the party against whom a constructive trust is imposed would not normally have been part of the original transaction giving rise to the claim for funds.

{¶ 77} For example, in *Cowling,* the subjects of the constructive trust were stepchildren who had been given stocks and other assets by their father, in violation of his wife's joint rights to the property. Id. at ¶ 2–3. The stepchildren were not parties to the original transactions between the husband and wife and had had no opportunity to be heard then. However, they did receive notice and an opportunity to defend their interests in the action that was filed for imposition of a constructive trust. They were also protected by the fact that a "party

seeking to have a constructive trust imposed bears the burden of proof by clear and convincing evidence." Id. at ¶ 20.

{¶ 78} Likewise, in *Ferguson v. Owens* (1984), 9 Ohio St.3d 223, 9 OBR 565, 459 N.E.2d 1293, the defendant being sued for imposition of a trust was not a party to the original action that gave rise to the plaintiff's claim to funds. In *Ferguson,* the underlying divorce decree required a husband to provide life insurance in the amount of $100,000 for the benefit of his children. The decree also provided that his ex-wife would be the owner of the policy. Id. The husband purchased a $100,000 accidental death and dismemberment policy in favor of the children. However, he also designated the woman with whom he was living as the beneficiary on a $40,000 life insurance policy that his employer provided. Id. at 223–224, 9 OBR 565, 459 N.E.2d 1293.

{¶ 79} After the husband's death, his ex-wife and children brought an unjust-enrichment action against the woman and asked for imposition of a constructive trust. Id. at 224, 9 OBR 565, 459 N.E.2d 1293. The lower courts granted summary judgment against the wife and children, concluding that there was "no demonstration upon the record, sufficient to create a genuine issue of material fact that the appellee acquired a right to those proceeds by any means contradictory to the fundamental principles of equity." Id. at 225, 9 OBR 565, 459 N.E.2d 1293.

{¶ 80} The Supreme Court of Ohio disagreed, holding that the facts reasonably presented an issue of whether the accidental-death-and-dismemberment policy was the type of policy contemplated by the decree. If the policy did not satisfy the requirements of a "life insurance policy," then a further factual determination would be required regarding whether the $40,000 life insurance policy fit within the boundaries of the decree. This had to do with the wording of the decree and the fact that the husband had changed employers after the decree was filed. Id. at 227, 9 OBR 565, 459 N.E.2d 1293.

{¶ 81} During the course of its discussion, the Supreme Court of Ohio clearly indicated that a constructive trust on behalf of the wife and children could be imposed upon the proceeds of the life insurance policy if they established their entitlement under the divorce decree. The issue was not one of due process; it was whether the terms of the decree were ambiguous and how they should be construed.

{¶ 82} Notably, the woman with whom the husband lived at the time of his death was not a party to the divorce decree, and the Supreme Court had no apparent concern with due process. This is because the nature of a constructive trust, in general, is that subsequent actions will give rise to the claim that a constructive trust should be imposed. See, e.g., *Willis v. Willis,* Franklin App.

No. 02AP–1337, 2003-Ohio-2581, 2003 WL 21152529 (action by former spouse and children against current spouse of decedent, for imposition of constructive trust on life insurance policy proceeds, where children were supposed to be made beneficiaries pursuant to the divorce decree), and *Groza–Vance v. Vance*, 162 Ohio App.3d 510, 524, 2005-Ohio-3815, 834 N.E.2d 15 (affirming constructive trust that was imposed with regard to property in Florida that had been improperly conveyed to husband's daughter from his second marriage. The divorce decree between the husband and his third wife required him to bequeath his real property to the third wife and also required that he not take actions to alter or change this provision in his will).

{¶ 83} "Due process" occurs when the party in possession of the property is accorded an opportunity to be heard in court on the issue of whether a constructive trust should be imposed. Mercuri received this opportunity. The trial court and magistrate erred, therefore, in concluding that Mercuri failed to receive due process because she was not a party to the divorce decree.

{¶ 84} Accordingly, Fischbach's second assignment of error is sustained.

IV

{¶ 85} Fischbach's third assignment of error is as follows:

{¶ 86} "The trial court erred in adopting the magistrate's decision which failed to require an evidentiary hearing to ascertain the percentage of funds in appellee's possession which belong to appellant."

{¶ 87} Under this assignment of error, Fischbach contends that the trial court erred in failing to conduct an evidentiary hearing to ascertain the percentage of the income stream that rightfully belongs to each party. The trial court concluded that a hearing was unnecessary because summary judgment had been rendered in Mercuri's favor. Therefore, there was no amount to compute.

{¶ 88} Fischbach contends that paragraph 13 of the separation agreement is ambiguous and that when all the provisions in the separation agreement are considered, the parties' intent was to provide Fischbach with a share of survivorship benefits equal to the term of the marriage over the term of the accrual, or in other words, approximately 30 years (the length of the marriage), divided by approximately 38 years (the months of Joseph's participation in STRS), divided by 50 percent.

{¶ 89} The survivorship portion of the decree states that:

{¶ 90} "Still further, the Husband shall elect the survivor annuity option concerning his State Teachers Retirement benefits and he shall designate the Wife as beneficiary of said survivor annuity up to the amount of said annuity

benefits. Still further, the Husband shall elect a survivor benefit which survivor benefit shall pay to the Wife the amount of either the $1,767.50 for retirement [sic] for the remainder of her life."

{¶ 91} Although this provision could have been worded a bit more clearly and has an obvious typographical error, the parties appear to have intended Fischbach to receive at least $1,767.50 for the remainder of her life. The formula suggested by Fischbach leads to a very similar result—approximately $1,776.[2]

{¶ 92} Because the record is not completely clear as to the precise amount of benefits Mercuri is currently receiving, this matter will be remanded to the trial court for resolution of the current amount of benefits, the percentage that should have been subject to a constructive trust, and any past amounts that may have been inequitably retained following Joseph's death in 2005. When we say "inequitably retained," we are not implying that Mercuri committed misconduct. As noted previously, fraud is not required in order for a court to impose a constructive trust. We are simply referring to the fact that although Mercuri has legal title to the funds, she should not, in good conscience, retain funds that were awarded to Fischbach in the divorce and that have been received by Mercuri as a result of Joseph's wrongful act in failing to comply with the divorce decree's requirement that he designate Fischbach as his beneficiary.

{¶ 93} Fischbach's third assignment of error is sustained.

V

{¶ 94} All of Fischbach's assignments of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN and FROELICH, JJ., concur.

---

**2.** Assuming that the monthly STRS benefits are $4,500, the monthly amount to be held in the constructive trust would be approximately $1,776, which is very close to the figure mentioned in the decree.